13 Cal.4th 952 (1996)
In re SADE C., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S SERVICES, Plaintiff and Respondent,
v.
GREGORY C., Defendant and Appellant.
In re VANESSA R., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S SERVICES, Plaintiff and Respondent,
v.
EDWARD R. et al., Defendants and Appellants.
Docket No. S048796.
Supreme Court of California.
August 26, 1996.
*958 COUNSEL
Paula C. Mendell, Ellen M. Matsumoto and Judy Weissberg-Ortiz, under appointments by the Supreme Court, for Defendants and Appellants.
*959 Jonathan B. Steiner, Stephanie G. Miller, Bradley A. Bristow and Caremla F. Simoncini as Amici Curiae on behalf of Defendants and Appellants.
No appearance for Plaintiff and Respondent.
OPINION
MOSK, J.
We granted review in this cause to address the question whether Anders v. California (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396] (hereafter sometimes Anders), which has been considered in decisions including People v. Wende (1979) 25 Cal.3d 436 [158 Cal. Rptr. 839, 600 P.2d 1071] (hereafter sometimes Wende), applies, or must or should be extended, to an indigent parent's appeal from a judgment or order, obtained by the state, adversely affecting his custody of a child or his status as the child's parent. As will appear, our answer is no.

I
(1)(See fn. 1.) In the Juvenile Court of the Los Angeles County Superior Court (hereafter the juvenile court or simply the court), the Los Angeles County Department of Children's Services (hereafter DCS) filed two separate petitions in two separate proceedings under the juvenile court law (Welf. & Inst. Code, § 200 et seq.), as detailed below.[1]
*960 In No. LK00851, DCS filed a petition requesting the juvenile court to adjudge a minor referred to as Sade C. to be within its jurisdiction and to declare her a dependent child. As subsequently amended, the petition alleged, inter alia, that Sade had suffered, or faced a substantial risk that she would suffer, serious physical harm or illness as a result of her parents' failure or inability to furnish adequate supervision or protection, or their inability to provide regular care, because of substance abuse. Facts to the following effect were subsequently established: Sade was born premature, weighed less than four pounds, suffered the effects of intrauterine cocaine ingestion, and was taken into DCS custody at four days old; her mother was Lakeisha C., then seventeen years old, who had a history of significant criminal activity and substantial drug use; her father was Gregory C., then twenty-four years old, who also had a history of significant criminal activity and substantial drug use.
In the course of the proceedings, the juvenile court appointed separate counsel for Lakeisha and Gregory.
When Sade was somewhat more than four months old, the juvenile court conducted what was in substance a hearing on jurisdiction and disposition. As to jurisdiction, it impliedly sustained the petition, effectively finding true the allegation of serious physical harm or illness. It found by clear and convincing evidence that, in the physical custody of Lakeisha and Gregory, Sade faced a substantial danger to her physical health that could not be avoided by any reasonable means short of removal. As to disposition, it made various orders. So far as pertinent here, it ordered Sade declared a dependent child. It also ordered her formally removed from the physical custody of Lakeisha and Gregory and transferred to that of DCS for suitable placement. In addition, it ordered DCS to provide family reunification services.
In anticipation of one of the juvenile court's orders, DCS had placed Sade with Lakeisha's aunt Bernice White. In compliance with another, it offered family reunification services. Lakeisha and Gregory, however, effectively rejected what was made available. Lakeisha had minimal contact or attempted contact with Sade; she continued to engage in crime and to use drugs, moving into and out of custody. For his part, Gregory had even less *961 contact or attempted contact with Sade, disclaiming paternity both before and after a court-ordered tissue analysis showed a 99.5 percent probability that he was in fact her father; apparently, he also continued to engage in crime and to use drugs, moving into and out of custody.
When Sade was about one year and five months old, the juvenile court impliedly ordered DCS to terminate family reunification services; at the same time, it expressly ordered it to provide permanent placement services and to initiate proceedings to appoint White as guardian.
When Sade was about one year and eight months old, the juvenile court took the guardianship proceedings off calendar and selected long-term foster care by White as the appropriate permanent plan.
When Sade was about two and one-half years old, the juvenile court found that she could or would be adopted by White and ordered DCS to initiate planning therefor.
Finally, when Sade was about three and one-half years old, the juvenile court conducted a hearing on termination of parental rights, among other matters. Gregory appeared, having been transported from prison; Lakeisha did not. The court ordered that the parental rights of Lakeisha and Gregory be terminated, finding by clear and convincing evidence that Sade would likely be adopted by White. It also ordered that a petition submitted by Gregory to change the placement of Sade from White's home to his mother's be denied.
Gregory subsequently filed in the juvenile court a notice of appeal from the orders terminating his parental rights and denying his change-of-placement petition. Lakeisha filed no such notice of any kind.
Gregory's appeal was docketed in the Second Appellate District of the Court of Appeal under No. B082230, and was assigned to Division Three thereof. On his application declaring indigency, the court appointed counsel to represent him on appeal. Counsel filed a brief that contained a statement of appealability, a statement of the case, a statement of the facts, and the following "argument," which relied impliedly on Anders and expressly on Wende and also, apparently, on the per curiam opinion of Division One of the Fourth Appellate District of the Court of Appeal in In re Joyleaf W. (1984) 150 Cal. App.3d 865 [198 Cal. Rptr. 114] (hereafter sometimes Joyleaf W.), overruled by that same court in In re Angelica V. (1995) 39 Cal. App.4th 1007, 1012 [46 Cal. Rptr.2d 295] (hereafter sometimes Angelica V.), which purported to extend Anders and Wende to appeals from the termination of *962 parental rights under the juvenile court law:[2] "[C]ounsel for appellant requests that this court independently review the entire record on appeal for any arguable issues. [¶] Present counsel has advised appellant that appellant may file a supplemental brief with the court within 30 days and may request the court to relieve present counsel. Present counsel remains available to brief any issue(s) upon invitation of the court." Gregory did not file a brief pro se. DCS did not appear.
In No. CK09428, DCS filed a petition requesting the juvenile court to adjudge a minor referred to as Vanessa R. to be within its jurisdiction and to declare her a dependent child. The petition alleged, inter alia, that Vanessa had suffered, or faced a substantial risk that she would suffer, serious physical harm inflicted nonaccidentally by her parents; that she had suffered, or faced a substantial risk that she would suffer, serious physical harm or illness as a result of her parents' failure or inability to furnish adequate supervision or protection; that she was suffering, or was facing a substantial risk that she would suffer, serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior against herself or others, because of the conduct of her parents and their inability to provide appropriate care; that she was under five years old and had been subjected severe physical abuse at her parents' hands; and that she had been subjected to one or more acts of cruelty by her parents. Facts to the following effect *963 were subsequently established: Vanessa was taken into DCS custody at four months old after she was delivered to a hospital emergency room for treatment of injuries including a fractured clavicle, fractured right arm, and bruises on both knees and (apparently) under her right eye; an emergency room physician was of the opinion that the injuries resulted from abuse and reported the matter; an associate of the child's pediatrician subsequently concurred in that view; the child's mother was Kris M., an "adult teenager[]" and high school graduate, who received Aid to Families With Dependent Children and had normally resided in the home of her mother and stepfather  her place of abode at the time of the injuries in question  but later moved; the child's father was Edward R., also an "adult teenager[]" and high school graduate, who worked at a grocery store and normally resided in the home of his mother and father.
During the proceedings, the juvenile court appointed separate counsel for Vanessa, Kris, and Edward.
Following mediation, Vanessa (through counsel), Kris, Edward, and DCS agreed in pertinent part as follows: they would submit to the juvenile court for determination on the basis of a DCS social study the petition's allegations of nonaccidental infliction of serious physical harm, severe physical abuse, and cruelty; they would move the court to dismiss those of serious physical harm or illness and serious emotional damage; Vanessa would be suitably placed with Kris's mother and stepfather (Kris herself having apparently moved from their home by this time); Kris and Edward would participate in individual counseling and in parenting training; and they would be allowed monitored visits and would be provided with family reunification services.
When Vanessa was about seven months old, the juvenile court conducted a hearing on jurisdiction and disposition. As to jurisdiction, it sustained the petition, finding true the allegations of nonaccidental infliction of serious physical harm, severe physical abuse, and cruelty, and dismissing those of serious physical harm or illness and serious emotional damage. It found by clear and convincing evidence that, in the physical custody of Kris and Edward, Vanessa faced a substantial danger to her physical health that could not be avoided by any reasonable means short of removal. As to disposition, it ordered her declared a dependent child. It also ordered her formally removed from the physical custody of Kris and Edward and transferred to that of DCS for suitable placement. Lastly, it ordered placement, visitation, individual counseling and parenting training, and family reunification services, all in accordance with the mediation agreement.
Kris and Edward subsequently filed in the juvenile court separate notices of appeal from, inter alia, the order declaring Vanessa a dependent child, including the findings of severe physical abuse and cruelty.
*964 The appeals of Kris and Edward were docketed in the Second Appellate District of the Court of Appeal under No. B084043, and were assigned to Division Three thereof.
On Kris's application declaring indigency, the Court of Appeal appointed counsel to represent her on appeal. Counsel filed a brief containing a statement of appealability, a statement of the case, a statement of the facts, and the following "argument," which relied impliedly on Anders and Wende and expressly on the per curiam opinion of Division One of the Fourth Appellate District of the Court of Appeal in In re Brian B. (1983) 141 Cal. App.3d 397 [190 Cal. Rptr. 153] (hereafter sometimes Brian B.), overruled by that same court in In re Angelica V., supra, 39 Cal. App.4th at page 1012, which purported to extend Anders (impliedly) and Wende (expressly) to appeals from a declaration of child dependency under the juvenile court law:[3] "[C]ounsel requests that this court independently review the entire record on appeal for arguable issues. [¶] Appellant has been advised by present counsel of her right to file a supplemental opening brief within thirty (30) days of the date this brief is filed. Appellant has been further advised that, in the supplemental opening brief, she may bring to the court's attention any issues she believes deserve review. Appellant has further been advised that she may request the court to relieve present counsel. Appellant has been further advised that, upon his or her [sic] request, present counsel will forward appellant's copy of the record on appeal for the purpose of preparing a supplemental opening brief, but that counsel will retain the record for the present to allow proper representation in the event that the court requests further briefing. [¶] Present counsel remains available to brief any issue(s) upon invitation of the court." Kris did not file a brief pro se. DCS did not appear.
On Edward's application declaring indigency, the Court of Appeal appointed counsel to represent him on appeal. Counsel filed a similar brief containing a statement of appealability, a statement of the case, a statement of the facts, and the following "argument," which relied impliedly on Anders and Wende and expressly on Brian B.: "[C]ounsel requests that this court *965 independently review the entire record on appeal in this case. Appellant has been advised by present counsel of his right to file a supplemental brief in this court within thirty days of the date this brief is filed. Appellant has been advised that in the supplemental brief, he may bring to the court's attention any issues he believes deserves [sic] review. Appellant has been further advised that he may ask the court to relieve present counsel, that present counsel will forward appellant's copy of the record on appeal for purposes of preparing a supplemental opening brief, upon his request, but that counsel will retain the record for the present to allow proper representation in the event the court requests further briefing. [¶] Present counsel has reviewed the record and remains available to brief any additional issues, upon the court's request." Edward did not file a brief pro se. DCS did not appear.
On its own motion, the Court of Appeal consolidated the otherwise unrelated appeals in the matters of Sade and Vanessa in order to address the question whether an appellate court must undertake its own "review of the entire record," in accord with Anders and/or Wende and/or other decisions, as to judgments or orders declaring child dependency or terminating parental rights under the juvenile court law. In a unanimous opinion certified for publication, it resolved the issue in the negative, expressly taking issue with Brian B. and Joyleaf W., and proceeded on its own motion to dismiss the appeals as abandoned.
On separate petitions by Gregory, Kris, and Edward, the Court of Appeal granted rehearing evidently in order to afford them an opportunity to present their views on the question indicated above, which had not been proposed or briefed by any of them previously. In a unanimous opinion certified for publication  which conformed to the original with some modifications  it again resolved the issue in the negative, expressly taking issue with Brian B. and Joyleaf W., and proceeded on its own motion to dismiss the appeals as abandoned.
Thereafter, on separate petitions by Gregory, Kris, and Edward, we granted review in order to resolve the conflict between the Courts of Appeal.

II
(2a) The first question presented is this: Does Anders apply to an indigent parent's appeal from a judgment or order, obtained by the state, adversely affecting his custody of a child or his status as the child's parent?

A
Before we may properly address this question, we must review Anders in detail. Previously, we had considered it against its antecedents. Today, we shall read it anew through its progeny as well.
*966 A century ago, in McKane v. Durston (1894) 153 U.S. 684, 687-688 [38 L.Ed. 867, 868, 14 S.Ct. 913] (hereafter McKane), the United States Supreme Court held that, so far as the United States Constitution was concerned, an "appeal from a judgment of conviction is not a matter of absolute right.... A review by an appellate court of the final judgment in a criminal case, however grave the offence of which the accused is convicted, was not at common law and is not now a necessary element of due process of law. It is wholly within the discretion of the State to allow or not to allow such a review.... [¶] It is, therefore, clear that the right of appeal may be accorded by the State to the accused upon such terms as in its wisdom may be deemed proper."
In the years since McKane, the court has not retreated from its holding that a state is not required by the United States Constitution to provide an appeal to a criminal defendant. During that period, however, each and every state has chosen to allow such review. In response, the court has developed an elaborate jurisprudence dependent on that choice.
In Griffin v. Illinois (1956) 351 U.S. 12 [100 L.Ed. 891, 76 S.Ct. 585, 55 A.L.R.2d 1055] (hereafter sometimes Griffin), the court was presented with the question whether the Fourteenth Amendment's due process or equal protection clause was violated when a state provided an indigent criminal defendant, like all others, an appeal as of right; required him to furnish a transcript of trial proceedings for adequate and effective review; but denied him a copy because he was unable to make the purchase for lack of funds. It gave an affirmative answer. Writing for a four-member plurality, Justice Black relied on both the due process clause and its requirement of fundamental fairness and the equal protection clause and its requirement of similar treatment for similarly situated individuals. "[O]ur ... constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system  all people charged with crime must, so far as the law is concerned, `stand on an equality before the bar of justice in every American court.'" (Id. at p. 17 [100 L.Ed. at p. 898] (plur. opn. by Black, J.).) "It is true that a State is not required by the Federal Constitution to provide ... a right to appellate review at all. [Citation.] But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty. Appellate review has now become an integral part of the [state] trial system for finally adjudicating the guilt or innocence of a defendant. Consequently at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons ... from *967 invidious discriminations." (Id. at p. 18 [100 L.Ed.2d at pp. 898-899] (plur. opn. by Black, J.).) "There can be no equal justice where the kind of" appeal "a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate" and effective "appellate review as defendants who have money enough to buy transcripts." (Id. at p. 19 [100 L.Ed. at p. 899] (plur. opn. by Black, J.).) Concurring in the judgment, Justice Frankfurter rested solely on the equal protection clause. (Id. at pp. 20-26 [100 L.Ed. at pp. 900-903] (cone. opn. of Frankfurter, J.).)
In Douglas v. California (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814] (hereafter sometimes Douglas), the court passed on the following rule of state criminal appellate procedure, which had been announced in People v. Hyde (1958) 51 Cal.2d 152, 154 [331 P.2d 42] (hereafter sometimes Hyde): "[U]pon application of an indigent defendant who has been convicted of a crime," appellate courts "should either (1) appoint an attorney to represent him on appeal or (2) make an independent investigation of the record and determine whether it would be of advantage to the defendant or helpful to the appellate court to have counsel appointed. This investigation should be made solely by the justices of the appellate courts. After such investigation, appellate courts should appoint counsel if in their opinion it would be helpful to the defendant or the court, and should deny the appointment of counsel only if in their judgment such appointment would be of no value to either the defendant or the court."
The court decided Douglas the very same day it handed down Gideon v. Wainwright (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733] (hereafter sometimes Gideon). In Gideon, it held that the United States Constitution, Sixth Amendment's guaranty that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence," is applicable against the states through the Fourteenth Amendment's due process clause, and that that guaranty runs in favor of indigents as well as all others  with the result that, at trial, an indigent has a right to the assistance of counsel appointed by the state. (Gideon v. Wainwright, supra, 372 U.S. at pp. 336-345 [9 L.Ed.2d at pp. 800-806].)
Unsurprisingly in light of Gideon, the Douglas court found the Hyde rule wanting under the Fourteenth Amendment's equal protection clause and apparently under its due process clause as well. In so doing, it effectively  and narrowly  held that, in his first appeal as of right, an indigent criminal defendant has a right to the assistance of counsel appointed by the state.
The Douglas court "agree[d] ... with Justice Traynor of the California Supreme Court, who said that the `[d]enial of counsel on appeal [to an *968 indigent] would seem to be a discrimination at least as invidious as that condemned in Griffin v. Illinois. ...' [Citation.] In Griffin ..., we held that a State may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty. There, ... the right to a free transcript on appeal was in issue. Here the issue is whether or not an indigent shall be denied the assistance of counsel on appeal. In either case the evil is the same: discrimination against the indigent. For there can be no equal justice where the kind of an appeal a man enjoys `depends on the amount of money he has.'" (Douglas v. California, supra, 372 U.S. at p. 355 [9 L.Ed.2d at pp. 813-814].)
The Douglas court explained that, under the Hyde rule, "the type of an appeal a person is afforded in the District Court of Appeal hinges upon whether or not he can pay for the assistance of counsel. If he can the appellate court passes on the merits of his case only after having the full benefit of written briefs and oral argument by counsel. If he cannot the appellate court is forced to prejudge the merits before it can even determine whether counsel should be provided. At this stage in the proceedings only the barren record speaks for the indigent, and, unless the printed pages show that an injustice has been committed, he is forced to go without a champion on appeal. Any real chance he may have had of showing that his appeal has hidden merit is deprived him when the court decides on an ex parte examination of the record that the assistance of counsel is not required." (Douglas v. California, supra, 372 U.S. at pp. 355-356 [9 L.Ed.2d at p. 814].)
The Douglas court conceded that, "consistently with the Fourteenth Amendment," "a State can ... provide for differences [between rich and poor] so long as the result does not amount to a denial of due process or an `invidious discrimination.' [Citations.] Absolute equality is not required; lines can be and are drawn and we often sustain them." (Douglas v. California, supra, 372 U.S. at pp. 356-357 [9 L.Ed.2d at p. 814].)
But straightway the Douglas court added: "[W]here the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." (Douglas v. California, supra, 372 U.S. at p. 357 [9 L.Ed.2d at p. 814], original italics.)
It is at this point that Anders, with which we are primarily concerned, was decided.
In Anders, the court considered appointed appellate counsel's duty to prosecute an indigent criminal defendant's first appeal as of right, "after [he] *969 has conscientiously determined that there is no merit to the ... appeal." (Anders v. California, supra, 386 U.S. at p. 739 [18 L.Ed.2d at p. 495].)
The factual setting of Anders was the so-called "no-merit letter" procedure that had been set out in In re Nash (1964) 61 Cal.2d 491, 495 [39 Cal. Rptr. 205, 393 P.2d 405], as follows: "[T]he requirement of the Douglas case is met ... when ... counsel is appointed to represent the defendant on appeal, thoroughly studies the record, consults with the defendant and trial counsel, and conscientiously concludes that there are no meritorious grounds of appeal. If thereafter the appellate court is satisfied from its own review of the record in the light of any points raised by the defendant personally that counsel's assessment of the record is correct, it need not appoint another counsel to represent the defendant on appeal and may properly decide the appeal without oral argument."
The Anders court concluded that the no-merit letter procedure "does not comport with fair procedure and lacks that equality that is required by the Fourteenth Amendment." (Anders v. California, supra, 386 U.S. at p. 741 [18 L.Ed.2d at p. 496].)
The Anders court explained that the "constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court  not counsel  then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." (Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498], fn. omitted.)
The Anders court further explained that "[t]his requirement would not force appointed counsel to brief his case against his client but would merely *970 afford the latter that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel. The no-merit letter, on the other hand, affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate.... This procedure will assure penniless defendants the same rights and opportunities on appeal  as nearly as is practicable  as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel." (Anders v. California, supra, 386 U.S. at p. 745 [18 L.Ed.2d at pp. 498-499].)[4]
In Jones v. Barnes (1983) 463 U.S. 745 [77 L.Ed.2d 987, 103 S.Ct. 3308], the court declined to extend Anders. It held that, even in an indigent criminal defendant's first appeal as of right, appointed appellate counsel is not under a "constitutional duty to raise every nonfrivolous issue requested by the defendant." (Id. at p. 746 [77 L.Ed.2d at p. 990].) In the course of its discussion, it restated the holding of Anders thus: "[A]n appointed attorney must advocate his client's cause vigorously and may not withdraw from a nonfrivolous appeal." (Id. at p. 749 [77 L.Ed.2d at p. 992].) It reasoned that, although "Anders bars counsel from abandoning a nonfrivolous appeal," it does not "bar[] counsel from abandoning a nonfrivolous issue on appeal." (Id. at p. 750 [77 L.Ed.2d at p. 992].) "Anders recognized that the role of the advocate `requires that he support his client's appeal to the best of his ability.' ... For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every `colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies Anders. Nothing in the Constitution or our interpretation of that document requires such a standard." (Id. at p. 754 [77 L.Ed.2d at p. 995].)
In Evitts v. Lucey (1985) 469 U.S. 387 [83 L.Ed.2d 821, 105 S.Ct. 830] (hereafter sometimes Evitts), the court held that, under the Fourteenth *971 Amendment's due process clause, a criminal defendant, whether indigent or not, has a right to the effective assistance of counsel in his first appeal as of right. It invoked Anders, among other decisions, which it said "deal[s] with the responsibilities of" appointed appellate counsel "representing an indigent criminal defendant" in his first appeal as of right, and "rest[s] on the premise that" such a defendant has a "right to effective assistance of counsel" (id. at p. 404 [83 L.Ed.2d at p. 835]): "the attorney ... must play the role of an active advocate" (id. at p. 394 [83 L.Ed.2d at p. 828]).
The Evitts court explained that its holding was based on the convergence of two lines of cases. In one, which includes Griffin, Douglas, and Anders, "we have held that the Fourteenth Amendment"  its due process clause as well as its equal protection clause  "guarantees a criminal appellant pursuing a first appeal as of right certain minimum safeguards necessary to make that appeal `adequate and effective,'" including "the right to counsel...." Evitts v. Lucey, supra, 469 U.S. at pp. 392, 403-405 [83 L.Ed.2d at pp. 827, 834-836].)[5] In the other, which includes Gideon, "we have held that the trial-level right to counsel, created by the Sixth Amendment and applied to the States through the Fourteenth Amendment, [citation], comprehends the right to effective assistance of counsel." (Id. at p. 392 [83 L.Ed.2d at p. 827].)
The Evitts court further explained: "In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that  like a trial  is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant  like an unrepresented defendant at trial  is unable to protect the vital interests at stake.... [N]ominal representation on an appeal as of right  like nominal representation at trial  does not suffice to render the proceedings constitutionally *972 adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." (Evitts v. Lucey, supra, 469 U.S. at p. 396 [83 L.Ed.2d at p. 830].)
The Evitts court went on to declare its conclusion. "A first appeal as of right ... is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney. This result is hardly novel. The petitioner[] in ... Anders ... claimed that, although represented in name by counsel, [he] had not received the type of assistance constitutionally required to render the appellate proceedings fair.... [W]e agreed ..., holding that counsel's failure ... to submit a brief on appeal ... rendered the subsequent judgment[] ... unconstitutional. In short, the promise of Douglas that a criminal defendant has a right to counsel on appeal  like the promise of Gideon that a criminal defendant has a right to counsel at trial  would be a futile gesture unless it comprehended the right to the effective assistance of counsel." (Evitts v. Lucey, supra, 469 U.S. at pp. 396-397 [83 L.Ed.2d at pp. 830-831], fns. omitted.)
Then, in Pennsylvania v. Finley (1987) 481 U.S. 551 [95 L.Ed.2d 539, 107 S.Ct. 1990] (hereafter sometimes Finley), the court declined to extend Anders beyond appointed appellate counsel's representation of an indigent criminal defendant in his first appeal as of right.
The Finley court reasoned that "Anders was based on the underlying constitutional right to appointed counsel established in Douglas. ... Relying on `that equality demanded by the Fourteenth Amendment,' [citation], the Douglas Court held that denial of counsel to indigents on first appeal as of right amounted to unconstitutional discrimination against the poor. In Anders, the Court held that in order to protect the `constitutional requirement of substantial equality and fair process' set out in Douglas, appointed appellate counsel must follow the procedures described [in Anders] when a case appears to be frivolous. [Citation.] Of course, Anders did not set down an independent constitutional command that all lawyers, in all proceedings, must follow these particular procedures. Rather, Anders established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel." (Pennsylvania v. Finley, supra, 481 U.S. at pp. 554-555 [95 L.Ed.2d at p. 545].)
The Finley court declared: "We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, see Johnson v. Avery, 393 U.S. 483, 488 (1969) [21 L.Ed.2d 718, 722-723, 89 S.Ct. 747], and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of *973 right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. Wainwright v. Torna, 455 U.S. 586 (1982) [71 L.Ed.2d 475, 102 S.Ct. 1300]; Ross v. Moffitt, 417 U.S. 600 (1974) [41 L.Ed.2d 341, 94 S.Ct. 2437]. We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, a fortiori, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process." (Pennsylvania v. Finley, supra, 481 U.S. at p. 555 [95 L.Ed.2d at pp. 545-546].) All the more so, because he mounts such an attack through an avenue that "is not part of the criminal proceeding itself, and ... is in fact considered to be civil in nature." (Id. at p. 557 [95 L.Ed.2d at p. 547].)
The Finley court concluded that a state's failure to follow the Anders procedures in collateral postconviction proceedings for an indigent criminal defendant does not offend the due process or equal protection clause. "In this context, the Constitution does not put the State to the difficult choice between affording no counsel whatsoever or following the strict procedural guidelines annunciated in Anders." (Pennsylvania v. Finley, supra, 481 U.S. at p. 559 [95 L.Ed.2d at p. 548].)
In arriving at its conclusion, the Finley court rejected an argument that the "Anders procedures should be applied to a state-created right to counsel on postconviction [collateral] review just because they are applied to the right to counsel on first appeal that this Court established in Douglas." (Pennsylvania v. Finley, supra, 481 U.S. at p. 556 [95 L.Ed.2d at p. 546].) The apparent assumption is "that a `right to counsel' can have only one meaning, no matter what the source of that right. But the fact that the defendant has been afforded assistance of counsel in some form does not end the inquiry for federal constitutional purposes. Rather, it is the source of that right to a lawyer's assistance, combined with the nature of the proceedings, that controls the constitutional question." (Ibid.) When the defendant "has no underlying constitutional right to appointed counsel," he "has no constitutional right to insist on the Anders procedures which were designed solely to protect that underlying constitutional right." (Id. at p. 557 [95 L.Ed.2d at p. 547].)
The Finley court also rejected an argument that, "even though the State need not grant a prisoner access to counsel on postconviction [collateral] review, once it has done so, the Due Process Clause ... requires that counsel's actions comport with the procedures enumerated in Anders." (Pennsylvania v. Finley, supra, 481 U.S. at p. 557 [95 L.Ed.2d at p. 547.) But when the prisoner "has received exactly that which [he] is entitled to receive *974 under state law," he "cannot claim any deprivation without due process." (Id. at p. 558 [95 L.Ed.2d at p. 548].)
Next, in McCoy v. Court of Appeals of Wisconsin (1988) 486 U.S. 429 [100 L.Ed.2d 440, 108 S.Ct. 1895] (hereafter sometimes McCoy), the court upheld a state rule of criminal appellate procedure requiring the so-called "Anders brief" to include a discussion why the appeal lacked merit, concluding, inter alia, that the rule was consistent with Anders itself.
The McCoy court restated the "central teaching of Anders" as follows: "[A]ppointed counsel [must] make the same diligent and thorough evaluation of the case as a retained lawyer before concluding that an appeal is frivolous. Every advocate has essentially the same professional responsibility whether he ... accepted a retainer from a paying client or an appointment from a court. The appellate lawyer must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal. In preparing and evaluating the case, and in advising the client as to the prospects for success, counsel must consistently serve the client's interest to the best of his ... ability. Only after such an evaluation has led counsel to the conclusion that the appeal is `wholly frivolous' is counsel justified in making a motion to withdraw." (McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at pp. 438-439 [100 L.Ed.2d at p. 453], fn. omitted.)
The McCoy court explained that Anders's "requirement" that "a motion to withdraw must be accompanied by `a brief referring to anything in the record that might arguably support the appeal[]' ... was designed to provide the appellate courts with a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeals to the best of their ability. [It] assures that indigent defendants have the benefit of what wealthy defendants are able to acquire by purchase  a diligent and thorough review of the record and an identification of any arguable issues revealed by that review." (McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at p. 439 [100 L.Ed.2d at p. 454].)
The McCoy court further explained that "the Anders brief assists the court in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw." (McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at p. 439 [100 L.Ed.2d at p. 454].) Such a brief, of course, "is not a substitute for an advocate's brief on the merits." (Id. at p. 444 [100 L.Ed.2d at p. 456]; accord, id. at pp. 439, fn. 13, 442 [100 L.Ed.2d at pp. 454, 455-456].) Rather, "it is a device for assuring that the constitutional rights of indigent defendants are scrupulously honored" (id. at p. 444 [100 L.Ed.2d at p. 456]) and are "not ... violated" (id. *975 at p. 442 [100 L.Ed.2d at p. 455]): it "enable[s] the court to decide whether the appeal is so frivolous that the defendant has no federal right to have counsel present his ... case to the court" (id. at p. 440, fn. 13 [100 L.Ed.2d at p. 454]).[6]
In light of the above, the McCoy court concluded that the state rule requiring an Anders brief to include a discussion why the appeal lacked merit was indeed consistent with Anders itself. "To satisfy federal constitutional concerns, an appellate court faces two interrelated tasks as it rules on counsel's motion to withdraw. First, it must satisfy itself that the attorney has provided the client with a diligent and thorough search of the record for any arguable claim that might support the client's appeal. Second, it must determine whether counsel has correctly concluded that the appeal is frivolous." (McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at p. 442 [100 L.Ed.2d at p. 455].) In these tasks, it is assisted by the Anders brief. It is further assisted by the discussion required by the rule. "Because counsel may discover previously unrecognized aspects of the law in the process of preparing a written explanation for his ... conclusion, the discussion requirement provides an additional safeguard against mistaken conclusions by counsel that the strongest arguments he ... can find are frivolous. Just like the references to favorable aspects of the record required by Anders, the discussion requirement may forestall some motions to withdraw and will assist the court in passing on the soundness of the lawyer's conclusion that the appeal is frivolous." (Ibid. [100 L.Ed.2d at p. 456].)
Then, in Penson v. Ohio (1988) 488 U.S. 75 [102 L.Ed.2d 300, 109 S.Ct. 346] (hereafter sometimes Penson), the court applied Anders and its "safeguards" (id. at p. 80 [102 L.Ed.2d at p. 308]) in a distinct factual setting.
Penson was an indigent criminal defendant who had been convicted in a state trial court of several offenses. He was appointed counsel by a state appellate court in an appeal as of right. Counsel later submitted to the court a document captioned "`Certification of Meritless Appeal and Motion'": He recited that he had carefully reviewed the record, had found no reversible error, and declined to prosecute a meritless appeal; he also requested leave to withdraw. (Penson v. Ohio, supra, 488 U.S. at pp. 77-78 [102 L.Ed.2d at p. 307].) The court granted the motion, permitting counsel to withdraw, allowing Penson himself an opportunity to submit a brief, and specifying that it *976 would thereafter "`independently review the record thoroughly'" for reversible error. (Id. at p. 78 [102 L.Ed.2d at p. 307].) Penson did not submit a brief. He applied for new counsel. The court denied his request. After making its own examination of the record, it noted that counsel's evaluation of the case was "`highly questionable'"; in its review, it found "`several arguable claims'"; in fact, it concluded that Penson's conviction and sentence for one offense were tainted by reversible error, and set them aside; nevertheless, it concluded that Penson had not been prejudiced by counsel's default because, among other reasons, it had itself thoroughly examined the record; it then proceeded to uphold his convictions and sentences for the other offenses. (Id. at p. 79 [102 L.Ed.2d at p. 308].)
The Penson court concluded that the state appellate court erred under Anders when it granted appointed appellate counsel's motion for leave to withdraw. It should not even have acted on the request because it had not yet "made its own examination of the record to determine whether counsel's evaluation of the case was sound." (Penson v. Ohio, supra, 488 U.S. at pp. 82-83 [102 L.Ed.2d at p. 310].) "Obviously, a court cannot determine whether counsel is in fact correct in concluding that an appeal is frivolous without itself examining the record for arguable appellate issues." (Id. at p. 83, fn. 6 [102 L.Ed.2d at p. 310].) Having chosen to act, however, it should have denied the request: counsel "failed to draw attention," through an Anders brief, "to `anything in the record that might arguably support the appeal.'" (Id. at p. 81 [102 L.Ed.2d at p. 309].) The Anders brief "serves the valuable purpose of assisting the court" (ibid.)  which faces "hurdle[s] ... in reviewing a record on appeal without the assistance of counsel" (id. at p. 82, fn. 5 [102 L.Ed.2d at p. 310])  "in determining both that counsel in fact conducted the required detailed review of the case and that the appeal is indeed so frivolous that it may be decided without an adversary presentation" (id. at pp. 81-82 [102 L.Ed.2d at pp. 309-310], fn. omitted). "[I]n marginal cases, it also provides an independent inducement to counsel to perform a diligent review": it removes any "`temptation to discharge [his] obligation'" by "`a one sentence letter instead of an effective brief'"; "[i]n addition, simply putting pen to paper can often shed new light on what may at first appear to be an open-and-shut issue." (Id. at pp. 81-82, fn. 4 [102 L.Ed.2d at pp. 309-310].)
The Penson court further concluded that the state appellate court erred under Anders, and did so "[m]ost significantly," when it failed to appoint new appellate counsel after it found "`several arguable claims'" in its own review of the record. (Penson v. Ohio, supra, 488 U.S. at p. 83 [102 L.Ed.2d at p. 310].) "As Anders unambiguously provides, `if [the appellate court] finds any of the legal points arguable on their merits (and therefore not *977 frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.'" (Ibid.)
Finally, in Austin v. U.S. (1994) 513 U.S. 5 [130 L.Ed.2d 219, 115 S.Ct. 380] (per curiam), the court granted appointed appellate counsel's application for leave to withdraw from representation of an indigent criminal defendant in advance of the deadline for filing a petition for writ of certiorari, the request being based on a claim that any such petition would be frivolous. In so doing, it recognized that, under Anders, "indigent [criminal] defendants pursuing appeals as of right have a constitutional right to a brief filed on their behalf by an attorney...." (Id. at p. ___ [130 L.Ed.2d at p. 223, 115 S.Ct. at p. 381].) But it reaffirmed that "that right does not extend to forums for discretionary review." (Id. at p. ___ [130 L.Ed.2d at p. 223, 115 S.Ct. at p. 381].)
Our consideration of Anders in the light of its antecedents and progeny yields the following conclusions.
(3) First, Anders establishes certain procedures for state appellate courts that are "prophylactic" in nature. (Pennsylvania v. Finley, supra, 481 U.S. at p. 555 [95 L.Ed.2d at p. 545]; see Penson v. Ohio, supra, 488 U.S. at p. 80 [102 L.Ed.2d at pp. 308-309] [speaking of Anders's "safeguards"].) It does not, however, "set down" any "independent... command" derived from the United States Constitution itself. (Pennsylvania v. Finley, supra, 481 U.S. at p. 555 [95 L.Ed.2d at p. 545]; see Penson v. Ohio, supra, 488 U.S. at p. 80 [102 L.Ed.2d at pp. 308-309].) If, after conscientious examination, appointed appellate counsel, in an indigent criminal defendant's first appeal as of right, moves the appellate court for leave to withdraw on the ground that the appeal is "wholly frivolous," "without merit," or generally "lack[ing] any basis in law or fact" (McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at pp. 438-439, fn. 10 [100 L.Ed.2d at p. 453]), these steps must be taken: Counsel must submit an Anders brief  which, although a peculiar kind of brief, is a brief nonetheless  "referring to anything in the record that might arguably support the appeal." (Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498].) The defendant must next be "furnished" a copy and "allowed ... [time] to raise any points that he chooses...." (Ibid.) The court must then conduct an Anders review, which is a "full examination of all the proceedings ... to decide whether the case is wholly frivolous." (Ibid.) If it does not find any point to be "arguable on [its] merits," it may grant counsel's motion to withdraw and proceed to dismiss the appeal, so far as federal constitutional principles are concerned, or decide it on the merits, if state law requires, on the basis that "the case is wholly frivolous." (Ibid.) By contrast, if it does so find, it must "afford the [defendant] the assistance of counsel to argue the appeal" (ibid.)  apparently, either *978 by denying counsel's motion to withdraw or by granting his request and appointing new counsel in his place.
(4) Second, Anders's "prophylactic" procedures are limited in their applicability to appointed appellate counsel's representation of an indigent criminal defendant in his first appeal as of right. (Pennsylvania v. Finley, supra, 481 U.S. at pp. 554-559 [95 L.Ed.2d at pp. 545-549]; see Anders v. California, supra, 386 U.S. at pp. 739, 741-742, 744-745 [18 L.Ed.2d at pp. 495, 496-497, 498-499]; see also Austin v. U.S., supra, 513 U.S. at p. ___ [130 L.Ed.2d at p. 223, 115 S.Ct. at p. 381].) They do not extend to an appeal, even on direct review, that is discretionary. (See Austin v. U.S., supra, 513 U.S. at p. ___ [130 L.Ed.2d at p. 223, 115 S.Ct. at p. 381].) A fortiori, they do not reach collateral postconviction proceedings. (Pennsylvania v. Finley, supra, 481 U.S. at pp. 554-559 [95 L.Ed.2d at pp. 545-549].) Proceedings of this sort are considered civil in nature and not criminal. (Id. at p. 557 [95 L.Ed.2d at p. 547].) As such, they are far removed from the object of the Anders court's concern, which was the first appeal as of right in a criminal action.
Third, Anders's "prophylactic" procedures are dependent for their applicability on the existence of an indigent criminal defendant's right, under the Fourteenth Amendment's due process and equal protection clauses, to the assistance of appellate counsel appointed by the state in his first appeal as of right. (Pennsylvania v. Finley, supra, 481 U.S. at p. 555 [95 L.Ed.2d at p. 545]; see Anders v. California, supra, 386 U.S. at pp. 739, 741-742, 744-745 [18 L.Ed.2d at pp. 495, 496-497, 498-499].) By operation of the due process guaranty, the right extends beyond nominal assistance to effective assistance. (Evitts v. Lucey, supra, 469 U.S. at pp. 391-400 [83 L.Ed.2d at pp. 826-833]; see Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498]; McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at pp. 435-439 [100 L.Ed.2d at pp. 451-454]; Penson v. Ohio, supra, 488 U.S. at pp. 79-85 [102 L.Ed.2d at pp. 308-312].) The same is true under the equal protection entitlement. (See Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498]; McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at pp. 435-439 [100 L.Ed.2d at pp. 451-454].)
Fourth, Anders's "prophylactic" procedures are designed solely to protect an indigent criminal defendant's right, under the Fourteenth Amendment's due process and equal protection clauses, to the assistance of appellate counsel appointed by the state in his first appeal as of right. (Pennsylvania v. Finley, supra, 481 U.S. at p. 557 [95 L.Ed.2d at p. 547]; Anders v. California, supra, 386 U.S. at pp. 739, 741-742, 744-745 [18 L.Ed.2d at pp. 495, 496-497, 498-499]; Jones v. Barnes, supra, 463 U.S. at pp. 750-754 [77 *979 L.Ed.2d at pp. 992-995]; Evitts v. Lucey, supra, 469 U.S. at pp. 396-397 [83 L.Ed.2d at pp. 829-831]; McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at pp. 435-444 [100 L.Ed.2d at pp. 451-457]; Penson v. Ohio, supra, 488 U.S. at pp. 79-85 [102 L.Ed.2d at pp. 308-312].) In a word, Anders seeks to ensure that "counsel acts in the role of an active advocate in behalf of his client...." (Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498].) In aid thereof, it requires an Anders brief from counsel, to compel him to play, and to show that he has played, the part that is proper to him as an attorney and the one for which he is suited. It also requires Anders review from the court, to compel it to assure itself, on an adequate basis, that counsel has done so and need do no more. Counsel's withdrawal, of course, deprives the defendant of his continued assistance, effective or otherwise. (See Penson v. Ohio, supra, 488 U.S. at p. 88 [102 L.Ed.2d at pp. 313-314].) It may be allowed only if any further assistance would be inutile  that is to say, only if the "appeal lacks any basis in law or fact" (McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at p. 439, fn. 10 [100 L.Ed.2d at p. 453]).[7]
Generally consistent with the foregoing conclusions is the discussion that appears in the two major California decisions bearing on the question.
In the immediate wake of Anders came People v. Feggans (1967) 67 Cal.2d 444 [62 Cal. Rptr. 419, 432 P.2d 21] (hereafter sometimes Feggans). (5) The Feggans court explained: "Under Anders, regardless of how frivolous an appeal may appear and regardless of how convinced appointed counsel as an advocate may be that there is nothing to advocate, a no-merit letter will not suffice. Counsel must prepare a brief to assist the court in understanding the facts and the legal issues in the case. The brief must set forth a statement of the facts with citations to the transcript, discuss the legal issues with citations of appropriate authority, and argue all issues that are arguable. Moreover, counsel serves both the court and his client by advocating changes in the law if argument can be made supporting change. If counsel concludes that there are no arguable issues and the appeal is frivolous, he may limit his brief to a statement of the facts and applicable law and may ask to withdraw from the case, but he must not argue the case against his client. Counsel is not allowed to withdraw from the case until the court is satisfied that he has discharged his duty to the court and his client to set forth adequately the facts and issues involved. If counsel is allowed to withdraw, defendant must be given an opportunity to present a brief, and *980 thereafter the court must decide for itself whether the appeal is frivolous. [Citations.] If any contention raised is reasonably arguable, no matter how the court feels it will probably be resolved, the court must appoint another counsel to argue the appeal." (Id. at pp. 447-448.)
On even the most cursory examination, Feggans presents itself as a sound reading of Anders that remains comfortably within that decision's holding. It need detain us no longer.
More than a decade later came Wende. There, the question was whether, on an indigent criminal defendant's first appeal as of right, "the Court of Appeal was required under Anders and Feggans to make a review of the entire record before determining that the appeal was frivolous. Defendant contends that such a review was required and relies in particular on the statement in Anders which requires the court, `after a full examination of all the proceedings, to decide whether the case is wholly frivolous.' [Citation.] The People, on the other hand, would have us interpret this seemingly absolute language as applying only when the defendant has availed himself of the opportunity to file a brief." (People v. Wende, supra, 25 Cal.3d at p. 440.) (6) The court resolved the issue in the defendant's favor. "We conclude that Anders requires the court to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous. This obligation is triggered by the receipt of such a brief from counsel and does not depend on the subsequent receipt of a brief from the defendant personally." (Id. at pp. 441-442.) The Wende court then stated its view that, even if counsel believes the appeal to lack any basis in law or fact, he need not move to withdraw so long as he (1) does not advise the court of his belief and thereby disqualify himself, and (2) informs the defendant that he may request the court to relieve him if he so desires. But it made plain that, in such a situation, all the steps specified by Anders had to be taken, other than those dependent on the filing of a motion to withdraw. The implicit rationale is that, for present purposes, substantial withdrawal is equivalent to formal withdrawal.[8]
Unlike Feggans, Wende reaches somewhat beyond Anders. It does so in its statement that appointed appellate counsel is not required to move to *981 withdraw if he believes the appeal to lack any basis in law or fact.[9] In support, it observes that "there may be practical benefits to the court and the client from counsel's remaining on the case" in at least a formal capacity. (People v. Wende, supra, 25 Cal.3d at p. 442.) That seems true. The court is "better able to accomplish its duties when [the] case is presented"  however minimally  "by counsel rather than by an untutored layperson." (4 ABA Standards for Criminal Justice, supra, std. 21-3.2, commentary, p. 21.43.) Similarly, the client is more likely to obtain a favorable outcome. Perhaps as a result, it has been stated that, in such a situation, counsel "should not seek to withdraw...." (Id., std. 21-3.2(b), p. 21.39, italics added.) In not requiring withdrawal, Wende clearly advances from Anders. At the same time, however, it stays squarely within its path, seeking to ensure that "counsel acts in the role of an active advocate in behalf of his client" (Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498]).[10]

B
(2b) To return to the beginning: the question is whether Anders applies to an indigent parent's appeal from a judgment or order, obtained by the *982 state, adversely affecting his custody of a child or his status as the child's parent. The answer is no.
By its very terms, Anders's "prophylactic" procedures are limited in their applicability to appointed appellate counsel's representation of an indigent criminal defendant  and there only in his first appeal as of right. An indigent parent adversely affected by a state-obtained decision on child custody or parental status is simply not a criminal defendant. Indeed, the proceedings in which he is involved must be deemed to be civil in nature and not criminal. (Cf. Pennsylvania v. Finley, supra, 481 U.S. at p. 557 [95 L.Ed.2d at p. 547] [stating that collateral postconviction proceedings are considered civil in nature and not criminal].) To quote Chief Justice Burger's concurring opinion in Lassiter v. Department of Social Services (1981) 452 U.S. 18, 34 [68 L.Ed.2d 640, 654, 101 S.Ct. 2153] (hereafter sometimes Lassiter), they are simply "not `punitive.'" That they may be said to "bear[] many of the indicia of a criminal trial" (Santosky v. Kramer (1982) 455 U.S. 745, 762 [71 L.Ed.2d 599, 612, 102 S.Ct. 1388]) goes to from and not to substance. As a consequence, they are far removed from the object of the Anders court's concern, which was the first appeal as of right in a criminal action.[11]
Furthermore, Anders's "prophylactic" procedures are dependent for their applicability on the existence of the indigent criminal defendant's right, under the Fourteenth Amendment's due process and equal protection clauses, to the assistance of appellate counsel appointed by the state  and there again, only in his first appeal as of right. That right of the indigent criminal defendant, however, does not exist for the indigent parent adversely affected by a state-obtained decision on child custody or parental status. True, the Finley court stated that the procedures in question are "relevant when"  albeit "only when"  "a litigant has a previously established constitutional right to counsel." (Pennsylvania v. Finley, supra, 481 U.S. at p. 555 [95 L.Ed.2d at p. 545].) But it made plain that the indicated right was that of the indigent criminal defendant in his first appeal as of right  the "right ... *983 established in Douglas" (id. at p. 554 [95 L.Ed.2d at p. 545])  and none other.[12]
Lastly, Anders's "prophylactic" procedures are designed solely to protect the indigent criminal defendant's right, under the Fourteenth Amendment's due process and equal protection clauses, to the assistance of appellate counsel appointed by the state  and there yet again, only in his first appeal as of right. Since that right of the indigent criminal defendant, by its very terms, does not exist for the indigent parent adversely affected by a state-obtained decision on child custody or parental status, any protection of that nonexistent "right"  whether in the form of the procedures in question or otherwise  fails at bottom for lack of an object.[13]

*984 III
(7a) The second question presented is this: Must or should Anders be extended to an indigent parent's appeal from a judgment or order, obtained by the state, adversely affecting his custody of a child or his status as the child's parent?
Here too, as will appear, the answer is no.
At the outset, we recognize that an indigent parent has a right to the assistance of appointed appellate counsel in his appeal from a state-obtained decision adversely affecting child custody or parental status under California statutes and rules of court. (Cal. Rules of Court, rule 1435(b) & (d)(3) [granting indigent parents a right to the assistance of appointed appellate counsel on appeal from a judgment or order declaring child dependency or terminating parental rights under the juvenile court law]; Fam. Code, § 7895 [same for an appeal from a judgment or order terminating parental rights under the Family Code]; accord, Civ. Code, former § 237.7, as added by Stats. 1984, ch. 605, § 1, p. 2326, and amended by Stats. 1986, ch. 823, § 1, pp. 2801-2802.)
We also recognize that an indigent parent may have a right to the assistance of appointed appellate counsel in his appeal from a state-obtained decision adversely affecting child custody or parental status, on a case by case basis, under the due process clause of the Fourteenth Amendment to the United States Constitution and/or that of article I, section 7, subdivision (a), of the California Constitution. (Compare In re Curtis S. (1994) 25 Cal. App.4th 687, 692-693 [30 Cal. Rptr.2d 739] [concluding that, at least as a general matter, an indigent parent, in his appeal from a termination of parental rights under what is now the Family Code, does not have a right to the assistance of appointed appellate counsel under the federal or state constitutional provisions: such a termination is obtained by a private party and not the state], and Adoption of Chad T., supra, 39 Cal. App.4th at p. 1109 [semble], with In re Andrew B., supra, 40 Cal. App.4th at p. 861 [implying that an indigent parent has a right to the assistance of appointed appellate counsel in his appeal from a state-obtained decision adversely affecting child custody or parental status under the federal and state constitutional provisions], and In re Bryce C. (1995) 12 Cal.4th 226, 234 [48 Cal. Rptr.2d 120, 906 P.2d 1275] [stating that the federal constitutional provision "may mandate the appointment of counsel at least on a case-by-case basis"].)
*985 Nevertheless, Anders's "prophylactic" procedures have heretofore been limited in their applicability to appointed appellate counsel's representation of an indigent criminal defendant in his first appeal as of right. The United States Supreme Court established that limitation in Anders itself. It has reaffirmed it in its progeny.
Thus, Anders's "prophylactic" procedures are not invoked by the indigent parent's right to the assistance of appointed appellate counsel in his appeal from a state-obtained decision adversely affecting child custody or parental status under California statutes and rules of court, or by any such right he may have under the due process clause of article I, section 7, subdivision (a), of the California Constitution. In Finley, the court held that the "Anders procedures should [not] be applied to a state-created right to counsel on postconviction [collateral] review" of a criminal judgment "just because they are applied to the right to counsel on first appeal ... established in Douglas." (Pennsylvania v. Finley, supra, 481 U.S. at p. 556 [95 L.Ed.2d at p. 546].) A fortiori, they should not be applied to such an entitlement outside the sphere of criminal law.[14]
Neither are Anders's "prophylactic" procedures invoked by any right the indigent parent may have to the assistance of appointed appellate counsel in his appeal from a state-obtained decision adversely affecting child custody or parental status under the due process clause of the Fourteenth Amendment to the United States Constitution. As stated, they are limited in their applicability to appointed appellate counsel's representation of an indigent criminal defendant.
Arguments for an extension of Anders's "prophylactic" procedures present themselves. But, after consideration, none proves persuasive.
One such argument is that Anders's "prophylactic" procedures must be extended to reach an indigent parent's appeal from a state-obtained decision adversely affecting child custody or parental status under direct compulsion of the due process clause of the Fourteenth Amendment and its requirement of fundamental fairness.
In considering this argument, we must keep in mind that Anders's procedures are indeed "prophylactic," and as such are not applicable, as it were, in and of themselves. Rather, they are dependent on the existence on the right to be protected, specifically, the indigent criminal defendant's right, under the Fourteenth Amendment's due process and equal protection clauses, to *986 the assistance of appellate counsel appointed by the state in his first appeal as of right.
Accordingly, we reject the argument at the threshold insofar as it asserts that Anders's "prophylactic" procedures must be extended, under the Fourteenth Amendment's due process clause, to an indigent parent's appeal in order to protect any right he may have to the assistance of appointed appellate counsel under state law. The Finley court could not have been clearer: The procedures in question are potentially "relevant when, and only when, a litigant has a previously established ... right to counsel" under the United States Constitution. (Pennsylvania v. Finley, supra, 481 U.S. at p. 555 [95 L.Ed.2d at p. 545], italics added.)
We must examine the argument more closely insofar as it asserts that Anders's "prophylactic" procedures must be extended, under the Fourteenth Amendment's due process clause, to an indigent parent's appeal in order to protect any right he may have to the assistance of appointed appellate counsel under the United States Constitution (see, ante, at p. 984).
Surely, Anders's "prophylactic" procedures are not automatically required by the Fourteenth Amendment's due process clause for an indigent parent with a right to the assistance of appointed appellate counsel under the United States Constitution. Under Finley, the procedures in question may be potentially available only for a person with a right of this very dimension. It does not follow that they are in fact available for each and every such person. As stated, they have been mandated for only one  the indigent criminal defendant in his first appeal as of right.
Whether Anders's "prophylactic" procedures are nevertheless required by the Fourteenth Amendment's due process clause for an indigent parent with a right to the assistance of appointed appellate counsel under the United States Constitution is the issue that remains. We believe that it may appropriately be resolved through the mode of analysis set out in Lassiter.
(8) In Lassiter, the court addressed the question whether an indigent parent has a right, under the Fourteenth Amendment's due process clause, to the assistance of trial counsel, appointed by the state, in a state-initiated proceeding on parental status. In conducting its analysis, it commenced with a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." (Lassiter v. Department of Social Services, supra, 452 U.S. at pp. 26-27 [68 L.Ed.2d at p. 649].) It then "evaluated" "three elements" derived from Mathews v. Eldridge (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33-34, 96 S.Ct. 893], "in *987 deciding what due process requires" for fundamental fairness, specifically, "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." (Lassiter v. Department of Social Services, supra, 452 U.S. at p. 27 [68 L.Ed.2d at p. 649].) It "balance[d] these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." (Ibid.) Although it recognized the "unique kind of deprivation" threatened in a matter involving parental status (ibid. [68 L.Ed.2d at p. 650]), it proceeded to hold that the parent does not have the entitlement in question in every proceeding, but may in a given one, to be determined in the first instance by the court in which the matter is pending subject to appellate review.
(7b) Applying Lassiter's mode of analysis, we evaluate and balance these three elements in order to determine whether the Fourteenth Amendment's due process clause requires Anders's "prophylactic" procedures for fundamental fairness: (1) the private interests at stake; (2) the state's interests involved; and (3) the risk that the absence of the procedures in question will lead to an erroneous resolution of the appeal.
(9) The private interests at stake are those of the indigent parent and his child. They are not reflected in the United States Constitution itself, which is "verbally silent on the specific subject" of children as well as parents. (Lassiter v. Department of Social Services, supra, 452 U.S. at p. 38 [68 L.Ed.2d at p. 657] (dis. opn. of Blackmun, J.).) Rather, they have been found to be implicit in the "liberty" protected by the Fourteenth Amendment's due process clause. (See Santosky v. Kramer, supra, 455 U.S. at p. 753 [71 L.Ed.2d at p. 606]; Lassiter v. Department of Social Services, supra, 452 U.S. at pp. 38-39 [68 L.Ed.2d at pp. 656-657] (dis. opn. of Blackmun, J.); In re Marilyn H. (1993) 5 Cal.4th 295, 306-307 [19 Cal. Rptr.2d 544, 851 P.2d 826].)
The indigent parent has a "liberty interest ... in the care, custody, and management of" his child. (Santosky v. Kramer, supra, 455 U.S. at p. 753 [71 L.Ed.2d at p. 606]; accord, id. at pp. 758-759 [71 L.Ed.2d at pp. 609-610]; Lassiter v. Department of Social Services, supra, 452 U.S. at p. 27 [68 L.Ed.2d at pp. 649-650]; see In re Marilyn H., supra, 5 Cal.4th at p. 306.) This concern has been characterized as "fundamental." (Santosky v. Kramer, supra, 455 U.S. at pp. 753, 759 [71 L.Ed.2d at pp. 606, 610]; accord, In re Carmaleta B. (1978) 21 Cal.3d 482, 489 [146 Cal. Rptr. 623, 579 P.2d 514]; see Lassiter v. Department of Social Services, supra, 452 U.S. at p. 27 [68 L.Ed.2d at p. 649] [using the term "important"]; id. at p. 31 [68 L.Ed.2d at p. 652] [using the term "extremely important"].) The parent has a *988 derivative "liberty interest" (Santosky v. Kramer, supra, 455 U.S. at p. 753 [71 L.Ed.2d at p. 606]) in the "accuracy and justice" (Lassiter v. Department of Social Services, supra, 452 U.S. at p. 27 [68 L.Ed.2d at p. 650]; see Santosky v. Kramer, supra, 455 U.S. at pp. 760-761, 765 [71 L.Ed.2d at pp. 610-611, 614]) of the resolution of his appeal. This concern has been described as "extremely important" in general (Lassiter v. Department of Social Services, supra, 452 U.S. at p. 31 [68 L.Ed.2d at p. 652]), and in fact "commanding" when parental status is involved and not merely child custody (id. at p. 27 [68 L.Ed.2d at p. 650]; accord, Santosky v. Kramer, supra, 455 U.S. at p. 759 [71 L.Ed.2d at p. 610]; see id. at p. 760 [71 L.Ed.2d at p. 611] [using the term "vital"]).[15] As a theoretical matter, these interests call for Anders's "prophylactic" procedures: they would arguably receive added, and appropriate, protection if steps were taken to ensure that "counsel acts in the role of an active advocate in behalf of his client" (Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498]). It must be noted, however, that the appealed-from decision, which is adverse to the parent and is predicated on detriment he caused or allowed his child to suffer, is presumptively accurate and just. (Cf. McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at p. 436 [100 L.Ed.2d at pp. 451-452] [stating that, "[i]f a convicted defendant elects to appeal, ... he must assume the burden of convincing an appellate tribunal that reversible error occurred at trial"].)
The child has a "liberty interest[]" (Santosky v. Kramer, supra, 455 U.S. at p. 754, fn. 7 [71 L.Ed.2d at p. 606]) in a "normal family home" (id. at p. 759 [71 L.Ed.2d at p. 610]), with his parents if possible (id. at p. 760 [71 L.Ed.2d at pp. 610-611]), or at least in a home that is "stable" (In re Marilyn H., supra, 5 Cal.4th at p. 306). This concern has been characterized as "important" (Santosky v. Kramer, supra, 455 U.S. at p. 754, fn. 7 [71 L.Ed.2d at p. 606] [semble]) and even "compelling" (In re Marilyn H., supra, 5 Cal.4th at p. 306). "It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or [other caretakers]. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current `home,' ... especially when such uncertainty is prolonged." (Lehman v. Lycoming County Children's Services (1982) 458 U.S. 502, 513-514 [73 L.Ed.2d 928, 938, 102 S.Ct. 3231].) The child has a derivative "liberty interest[]" (Santosky v. Kramer, supra, 455 U.S. at p. 754, fn. 7 [71 L.Ed.2d at p. 606]) in an accurate and just resolution of his parent's appeal (see id. at pp. 760-761, 765 [71 L.Ed.2d at pp. 610-612, 614]). This concern too might be called "important" (Santosky v. Kramer, supra, 455 U.S. at p. 754, fn. 7 [71 L.Ed.2d at p. 606] [semble]) and even "compelling" (In re Marilyn H., supra, 5 Cal.4th at p. *989 306).[16] (7c) As a theoretical matter, these interests may either call for, or counsel against, Anders's "prophylactic" procedures. What the parent wants or needs is not necessarily what the child wants or needs. (See Santosky v. Kramer, supra, 455 U.S. at p. 788, fn. 13 [71 L.Ed.2d at pp. 628-629] (dis. opn. of Rehnquist, J.).) If consistent, any added protection arguably given to the parent might benefit the child as well. If inconsistent, however, such protection might effectively cause the child harm by helping the parent. The presumption, evidently, is that the wants and needs of parent and child are inconsistent. As stated, the appealed-from decision, which is predicated on detriment the parent caused or allowed his child to suffer, is presumptively accurate and just. (Cf. Santosky v. Kramer, supra, 455 U.S. at p. 760 [71 L.Ed.2d at p. 611] [stating that, "[a]fter the State has established parental unfitness ..., the court may assume ... that the interests of the child and the natural parents ... diverge"].)[17]
The second element embraces the state's interests. The state has a "parens patriae interest in preserving and promoting the welfare of the child...." (Santosky v. Kramer, supra, 455 U.S. at p. 766 [71 L.Ed.2d at p. 615]; accord, Lassiter v. Department of Social Services, supra, 452 U.S. at p. 27 [68 L.Ed.2d at p. 650].) This concern has been characterized as "urgent" (Lassiter v. Department of Social Services, supra, 452 U.S. at p. 27 [68 L.Ed.2d at p. 650]; accord, Santosky v. Kramer, supra, 455 U.S. at p. 766 [71 L.Ed.2d at p. 615]) and even "compelling" (In re Marilyn H., supra, 5 Cal.4th at p. 307). The state also has an interest in an accurate and just resolution of the parent's appeal. (See Santosky v. Kramer, supra, 455 U.S. at p. 766 [71 L.Ed.2d at p. 615]; Lassiter v. Department of Social Services, supra, 452 U.S. at p. 27 [68 L.Ed.2d at p. 650].) This concern might be called "important" (Santosky v. Kramer, supra, 455 U.S. at p. 754, fn. 7 [71 L.Ed.2d at p. 606]) and even "compelling" (In re Marilyn H., supra, 5 Cal.4th at p. 306). Finally, the state has a "fiscal and administrative interest in reducing the cost and burden of [the] proceedings." (Santosky v. Kramer, *990 supra, 455 U.S. at p. 766 [71 L.Ed.2d at p. 615]; accord, Lassiter v. Department of Social Services, supra, 452 U.S. at p. 28 [68 L.Ed.2d at p. 650].) This concern has been deemed merely "legitimate." (Lassiter v. Department of Social Services, supra, 452 U.S. at p. 28 [68 L.Ed.2d at p. 650].) To be sure, money counts little. "[I]t is hardly significant enough to overcome private interests as important as those" of the indigent parent and his child. (Ibid.) But time counts more. Proceedings such as these "must be concluded as rapidly as is consistent with fairness...." (Id. at p. 32 [68 L.Ed.2d at p. 653].) A "period of time" that "may not seem ... long ... to an adult ... can be a lifetime to a young child." (In re Marilyn H., supra, 5 Cal.4th at p. 310.) "Childhood does not wait for the parent to become adequate." (Ibid. As a theoretical matter, these interests may either call for, or counsel against, Anders's "prophylactic" procedures. They are in opposition to the extent that an economical and expeditious resolution is hindered. They are in support, by contrast, to the extent that an accurate and just resolution is facilitated. But to repeat: The appealed-from decision, which is adverse to the parent and is predicated on detriment he has caused or allowed his child to suffer, is presumptively accurate and just. It presumptively establishes that the child's welfare lies with someone other than his parent.
The third and final element concerns the risk that the absence of Anders's "prophylactic" procedures will lead to an erroneous resolution of the indigent parent's appeal. As a practical matter, we believe that the chance of error is negligible. We do not ignore the fact that such error may be irremediable. (See, e.g., Adoption of Alexander S. (1988) 44 Cal.3d 857, 868 [245 Cal. Rptr. 1, 750 P.2d 778].) Nevertheless, our consideration of the many cases that have come before us on petition for review reveals that appointed appellate counsel faithfully conduct themselves as active advocates in behalf of indigent parents. This causes no surprise: the attorneys are enabled, and indeed encouraged, to effectively represent their clients by the procedural protections accorded them in the Court of Appeal, including the right to precedence over all other causes (Welf. & Inst. Code, § 395), which parallel those accorded them in the juvenile court (see, e.g., In re Marilyn H., supra, 5 Cal.4th at pp. 306-310). In accord is the experience of Division One of the Fourth Appellate District of the Court of Appeal, as it recently recounted in In re Angelica V. Having applied the procedures in question for more than a decade under its holdings in Brian B. and Joyleaf W., the court declared that "we have discovered, to the best of our present recollection, no unbriefed issues warranting further attention." (In re Angelica V., supra, 39 Cal. App.4th at p. 1015, italics added.) As a result, it judged the procedures "unproductive" (id. at p. 1016), and overruled Brian B. and Joyleaf W.
After evaluating and balancing all three elements, we believe that the requirement of fundamental fairness contained in the Fourteenth Amendment's due process clause does not compel imposition of Anders's "prophylactic" procedures. Procedures that are practically "unproductive," like those *991 in question, need not be put into place, no matter how many and how weighty the interests that theoretically support their use. To be sure, these procedures may have "symbolic" value of some kind. (Santosky v. Kramer, supra, 455 U.S. at p. 764 [71 L.Ed.2d at p. 613].) Such value, however, is too slight to compel their invocation.[18]
A similar argument is that Anders's "prophylactic" procedures must be extended beyond an indigent criminal defendant's first appeal as of right in order to reach an indigent parent's appeal from a state-obtained decision adversely affecting child custody or parental status under direct compulsion of the equal protection clause of the Fourteenth Amendment and its requirement of similar treatment for similarly situated individuals. The premise fails. Criminal defendants and parents are not similarly situated. By definition, criminal defendants face punishment. Parents do not. (Lassiter v. Department of Social Services, supra, 452 U.S. at p. 34 [68 L.Ed.2d at p. 654] (conc. opn. of Burger, C.J.).) Criminal defendants, as such, are expressly given protections in the United States Constitution itself. (See U.S. Const., Amends. V, VI, VIII, & XIV, § 1; cf. id., art. III, § 3 [treason].) Parents are not. Moreover, at trial, criminal defendants have a general right under the Fourteenth Amendment's due process clause to the assistance of appointed trial counsel if indigent (Gideon v. Wainwright, supra, 372 U.S. at pp. 336-345 [9 L.Ed.2d at pp. 800-806]), are entitled to fully confront and cross-examine witnesses under the Sixth Amendment as made applicable to the states through the Fourteenth Amendment's due process clause (Pointer *992 v. Texas (1965) 380 U.S. 400, 403-406 [13 L.Ed.2d 923, 925-928, 85 S.Ct. 1065]), and are favored by the imposition on the state of the burden of proof beyond a reasonable doubt, also through the Fourteenth Amendment's due process clause (In re Winship (1970) 397 U.S. 358, 361-364 [25 L.Ed.2d 368, 373-375, 90 S.Ct. 1068]); and, in their first appeal as of right, they have a general right to appointed appellate counsel under both the due process and equal protection clauses of the Fourteenth Amendment (Douglas v. California, supra, 372 U.S. at pp. 354-358 [9 L.Ed.2d at pp. 812-815]). Parents are not so benefited. In analogous proceedings at the trial level, they do not have a general due process right to appointed trial counsel (Lassiter v. Department of Social Services, supra, 452 U.S. at pp. 24-32 [68 L.Ed.2d at pp. 647-653]), are not entitled to full confrontation and cross-examination (In re Malinda S., supra, 51 Cal.3d at pp. 384-385 [semble]), and are not favored through the standard of proof beyond a reasonable doubt (see Santosky v. Kramer, supra, 455 U.S. at pp. 768-770 [71 L.Ed.2d at pp. 616-617]); on appeal, they do not have a general federal constitutional right to appointed appellate counsel, at least not by operation of the due process clause. All this is not to magnify criminal defendants and diminish parents. It is only to show that, for present purposes, they are not similarly situated.[19]
A final argument is that Anders's "prophylactic" procedures should be extended to reach an indigent parent's appeal from a state-obtained decision adversely affecting child custody or parental status as a matter of policy in the exercise of our inherent power to declare rules of California appellate procedure.
The United States Supreme Court has declined to apply Anders's "prophylactic" procedures in criminal proceedings beyond an indigent criminal defendant's first appeal as of right. Its rationale appears to be this: Whatever the benefits, the costs are greater. The benefits are, essentially, ensuring that appointed appellate counsel "acts in the role of an active advocate in behalf of his client" (Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498]). The costs comprise the quantifiable expense of time and money and also the rather diffuse and abstract harm that the state experiences when the finality of its judgments is delayed.
*993 For our part, we decline to apply Anders's "prophylactic" procedures in an indigent parent's appeal from a state-obtained decision adversely affecting child custody or parental status. Our rationale is similar. Whatever the benefits in ensuring that appointed appellate counsel conduct themselves as active advocates  they appear to be relatively small  the costs are greater. These obviously include time and money and delay in finality. It is true that the state's interest in its financial resources is no stronger here than elsewhere. But its interest in expeditiousness is strong indeed. As stated, proceedings such as these "must be concluded as rapidly as is consistent with fairness...." (Lassiter v. Department of Social Services, supra, 452 U.S. at p. 32 [68 L.Ed.2d at p. 653].)[20] Its interest in finality is stronger still. In fact, it is "unusually strong." (Lehman v. Lycoming County Children's Services, supra, 458 U.S. at p. 513 [73 L.Ed.2d at p. 938].) The costs also involve the child  especially so. In fact, it is they that support the state's particular interest in finality. (See id. at pp. 513-514 [73 L.Ed.2d at pp. 938-939].) They comprise the pointed and concrete harm that the child may suffer. Not in every case, of course, will he be forced to wait overlong for a "normal family home" (Santosky v. Kramer, supra, 455 U.S. at p. 759 [71 L.Ed.2d at p. 610]), or at least one that is "stable" (In re Marilyn H., supra, 5 Cal.4th at p. 306). But in each he will face the threat. Unless necessary, he should not.[21]

*994 IV
(10) As stated, because no claim of error or other defect was raised, the Court of Appeal dismissed, as abandoned, Gregory's appeal from the orders terminating his parental rights in Sade and denying his change-of-placement petition. For the same reason, it dismissed, as abandoned, the separate appeals of Edward and Kris from the order declaring Vanessa a dependent child. In each instance, it acted on its own motion.
We believe that the Court of Appeal did not err in dismissing any of the appeals as abandoned. A "reviewing court has inherent power, on motion or its own motion, to dismiss an appeal which it cannot or should not hear and determine." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 508, p. 494.) An appealed-from judgment or order is presumed correct. (E.g., Denham v. Superior Court (1970) 2 Cal.3d 557, 564 [86 Cal. Rptr. 65, 468 P.2d 193].) Hence, the appellant must make a challenge. In so doing, he must raise claims of reversible error or other defect (see ibid.), and "present argument and authority on each point made" (County of Sacramento v. Lackner (1979) 97 Cal. App.3d 576, 591 [159 Cal. Rptr. 1]; accord, In re Marriage of Ananeh-Firempong (1990) 219 Cal. App.3d 272, 278 [268 Cal. Rptr. 83]). If he does not, he may, in the court's discretion, be deemed to have abandoned his appeal. (Berger v. Godden, supra, 163 Cal. App.3d at p. 1119.) In that event, it may order dismissal. (Ibid.) Such a result is appropriate here. With no error or other defect claimed against the orders appealed from, the Court of Appeal was presented with no reason to proceed to the merits of any unraised "points"  and, a fortiori, no reason to reverse or even modify the orders in question. (See People v. Brigham (1979) 25 Cal.3d 283, 289 [157 Cal. Rptr. 905, 599 P.2d 100].)[22]

*995 V
For the foregoing reasons, we conclude that we must affirm the judgment of the Court of Appeal.
It is so ordered.
George, C.J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.
KENNARD, J., Dissenting.
Under California law, indigent parents seeking to appeal a trial court's decision adversely affecting their parental rights in a case brought by the state are entitled to court-appointed counsel. The question before the court is this: when the appointed attorney notifies the appellate court that there are no arguable issues, what steps should the court take to ensure that the appealing parent has not been denied the assistance of counsel?
In Anders v. California (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396] (hereafter sometimes referred to as simply Anders), the United States Supreme Court held that when a court-appointed attorney representing an indigent criminal appellant concludes that there are no meritorious grounds of appeal, counsel should so inform the court and ask leave to withdraw from the case. To ensure that the appellant has not been denied the constitutional right to the assistance of counsel, the request must be accompanied by a brief setting forth the facts of the case, and "referring to anything in the record that arguably might support the appeal." (Id. at p. 744 [18 L.Ed.2d at p. 498].) Also, a copy of the brief must be provided to the appellant, who must be given the opportunity to raise "any points that he chooses." (Ibid.) The appellate court must then conduct a "full examination of all the proceedings" to determine "whether the case is wholly frivolous." (Ibid.)
In today's decision, the majority holds that the Anders procedures need not be complied with in an appeal by an indigent parent from a judgment that was obtained by the state and adversely affects the custodial rights of the parent or the latter's status as the child's parent. Instead, the majority concludes that the appellate court should dismiss the appeal because the appellant is deemed to have "abandoned" it by failing to file a brief raising any claims of error.
I disagree. In my view, the procedure that the high court set forth in Anders v. California, supra, 386 U.S. 738, is reflected in our state's statutory scheme which, as I noted at the outset, entitles indigent parents appealing a *996 judgment adversely affecting their parental rights to a court-appointed attorney acting as an active advocate on their behalf. As discussed below, the majority's holding has been rejected by almost every other state that has considered the issue.

I
This is a consolidated appeal of two unrelated cases, both arising in Los Angeles County.
In the first case, Gregory C. appealed from a superior court order that terminated Gregory's parental rights in his daughter, Sade, and denied his request that Sade be placed in the home of Gregory's mother, instead directing that Sade be placed in the custody of her mother's aunt. Declaring himself indigent, Gregory asked the Court of Appeal to appoint counsel to pursue his appeal. The court did so. Thereafter, Gregory's appellate attorney filed a brief. The brief contained merely the following: a statement of the case and a statement of facts; a declaration stating that counsel had thoroughly reviewed the record; and a request that the court examine the record to determine the existence of arguable issues, in accordance with the procedure established in People v. Wende (1979) 25 Cal.3d 436 [158 Cal. Rptr. 839, 600 P.2d 1071] (hereafter sometimes referred to as simply Wende). Counsel did not seek to withdraw from the case, stating she would "brief any issue(s) that the Court requests." Counsel mentioned that she had advised Gregory that he could himself submit a brief to the court within 30 days. Although counsel did not state that she had found no arguable points, this court has said that such a statement is unnecessary: "Counsel's inability to find any arguable issues may readily be inferred from [her] failure to raise any." (Wende, supra, 25 Cal.3d at p. 442.)
In the second case, Edward R. and Kris M., the indigent parents of Vanessa R., each appealed from a superior court order finding Vanessa to be the victim of severe physical abuse and cruelty and declaring her a dependent of the court. At their request, the Court of Appeal appointed counsel to represent them on appeal. Because of the adverse interests at stake, the court appointed a separate attorney for each parent. Thereafter, each attorney submitted a "no issue" brief that in all significant respects was similar to the one filed by counsel for Gregory C.
After consolidating the two cases, the Court of Appeal held that it was under no duty to independently examine the appellate record to determine the existence of any arguable issues. Because none of the attorneys had submitted a brief raising any claims of error, the Court of Appeal dismissed the appeals as abandoned.

*997 II
Although the issue here arose in a civil setting, any analysis must, as the majority acknowledges (maj. opn., ante, at pp. 968-969), commence with a discussion of the United States Supreme Court's 1967 decision in Anders v. California, supra, 386 U.S. 738, which involved an indigent appellant in a criminal case.
In Anders, the high court explained: "[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court  not counsel  then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." (Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498].)
A dozen years later, in People v. Wende, supra, 25 Cal.3d 436, this court altered the procedure that the high court established in Anders v. California, supra, 386 U.S. 738, in one minor respect: we held that in a criminal case a court-appointed appellate counsel who, after a thorough review of the record, finds no potentially meritorious issues to raise, need not seek permission from the court to withdraw from the case. If the appellate court's examination of the record reveals specific issues worthy of argument, it may ask counsel to brief and argue those points. (People v. Wende, supra, 25 Cal.3d at p. 442.)
Underlying the holdings of Anders and Wende is the recognition that the federal constitution's requirement of "substantial equality" and "fair process" can be achieved only when a court-appointed attorney acts as an active advocate for the client. (Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498]; People v. Wende, supra, 25 Cal.3d at p. 439.) Although there is no constitutional right to appeal a criminal conviction, the United States Supreme Court has held that once a state chooses to create a right to appeal such convictions, then all criminal defendants, rich and poor alike, are entitled to the competent assistance of counsel on appeal. (Douglas v. California (1963) 372 U.S. 353, 358 [9 L.Ed.2d 811, 815, 83 S.Ct. 814].)

*998 III
In California, the Legislature has granted indigent parents the right to the assistance of a court-appointed attorney when appealing a judgment of the juvenile court adversely affecting their parental rights. Thus, an indigent parent who seeks to appeal a judgment terminating parental rights has a state-created right to be represented by a court-appointed attorney to pursue the appeal. (Fam. Code, § 7895.) As to an indigent parent seeking to appeal a judgment of the juvenile court declaring the child to be a dependent child of the court, there is no express state-created right to appointed counsel on appeal. But such a right is "implicit in the whole statutory scheme" governing dependent children. (In re Jacqueline H. (1978) 21 Cal.3d 170, 176 [145 Cal. Rptr. 548, 577 P.2d 683], citing In re Simeth (1974) 40 Cal. App.3d 982, 984-985 [115 Cal. Rptr. 617]; see also Cal. Rules of Court, rule 1435.) Recently, in 1994, the Legislature enacted Welfare and Institutions Code section 317.5, which declares not only that parents in dependency proceedings have the right to the assistance of counsel, but that any counsel appointed to represent the parent must be "competent."[1]
What steps did the Legislature want appellate courts to take to ensure that indigent parents appealing a judgment adversely affecting their parental rights would be guaranteed their right to counsel, and that counsel provide "competent" assistance, as required by Welfare and Institutions Code section 317.5? The Legislature did not say. It is likely, however, that the Legislature intended that in such cases the appellate courts employ the same procedure the high court established in Anders v. California, supra, 386 U.S. 738, to "insure that indigent criminal appellants receive effective assistance of counsel." (U.S. v. Burnett (2d Cir.1993) 989 F.2d 100, 104.) In support of my view, I offer the following.
As the majority concedes, denial of the right to counsel "may be irremediable" (maj. opn., ante, at p. 990). Thus, if an appellate counsel's ineffective representation or failure to act as a competent advocate results in the affirmance of a juvenile court's judgment erroneously depriving a parent of the custody of the child, that judgment results in a loss to both the parent and the child that can never be undone. It is therefore essential that steps be taken before the appeal is decided to ensure that the parent is provided with competent counsel.
*999 Also, in 1994, when the Legislature enacted Welfare and Institutions Code section 317.5 (requiring that appointed counsel be "competent"), California courts were already following the procedures that the high court had articulated in 1967 in Anders v. California, supra, 386 U.S. 738 (affording indigent criminal appellants the right to competent court-appointed counsel) and that this court modified slightly in People v. Wende, supra, 25 Cal.3d 436. In addition, although in 1994 this court had yet to consider the applicability of the Anders procedure to appeals by indigent parents from juvenile court decisions, every Court of Appeal to consider the issue up to that time had assumed applicability of the Anders procedures to such appeals. (See, e.g., In re Twighla T. (1992) 4 Cal. App.4th 799, 803 [5 Cal. Rptr.2d 752]; In re Kristin W. (1990) 222 Cal. App.3d 234, 250 [271 Cal. Rptr. 629]; In re Adrian O. (1984) 155 Cal. App.3d 631, 635 [202 Cal. Rptr. 287]; In re Joyleaf W. (1984) 150 Cal. App.3d 865, 869 [198 Cal. Rptr. 114]; In re Brian B. (1983) 141 Cal. App.3d 397, 398 [190 Cal. Rptr. 153]; In re Jesse H. (1981) 126 Cal. App.3d 1048, 1049 [178 Cal. Rptr. 205].)
I am not alone in my view that the United States Supreme Court's holding in Anders v. California, supra, 386 U.S. 738 applies with equal force to cases involving indigent parents appealing a juvenile court's decision adversely affecting their parental rights. Almost every other jurisdiction that has addressed this issue has so held. (J.K. v. Lee County (Ala. Civ. App. 1995) 668 So.2d 813, 816; Matter of Keller (1985) 138 Ill. App.3d 746 [93 Ill.Dec. 190, 486 N.E.2d 291, 292]; Morris v. Lucas County Children Serv. Bd. (1989) 49 Ohio App.3d 86 [550 N.E.2d 980, 981]; In re V.E. (1992) 417 Pa.Super. 68 [611 A.2d 1267, 1275]; see also State v. Balfour (1991) 311 Or. 434 [814 P.2d 1069] [applying Anders procedures in termination of parental rights case, but holding that under Anders an appellate court need not review the record if appellate counsel finds no issues arguable on the merits but does not withdraw]; In re Welfare of Hall (1983) 99 Wn.2d 842 [664 P.2d 1245] [denying counsel's motion to withdraw on the ground that Anders is inapplicable, but not discussing whether court must review record if counsel finds no nonfrivolous issues].)
For the reasons given above, I conclude that the protective procedure that the high court established in Anders v. California, supra, 386 U.S. 738, is implicitly included in California's statutory scheme granting indigent parents the right to the competent assistance of court-appointed counsel on appeal from a juvenile court judgment adversely affecting their parental rights.

Conclusion
I would reverse the judgment of the Court of Appeal, and I would remand these matters with directions to that court to follow the procedures set forth *1000 in Anders v. California, supra, 386 U.S. 738, and People v. Wende, supra, 25 Cal.3d 436.
NOTES
[1] Under the juvenile court law and the Family Code, the juvenile court and the family court were both "created to protect children and to preserve and strengthen the child's family ties." (Edwards, The Relationship of Family and Juvenile Courts in Child Abuse Cases (1987) 27 Santa Clara L.Rev. 201, 205-206.) "Both courts involve family and child custody issues...." (Id. at p. 205.)

The juvenile court primarily "involves application of the ... child protection function." (Edwards, The Relationship of Family and Juvenile Courts in Child Abuse Cases, supra, 27 Santa Clara L.Rev. at p. 205.) "[I]n juvenile court, the state takes formal action to restrict parental behavior regarding children, to provide services to children and their families, and, if necessary, to remove children from the custody of their parents.... The state takes an assertive role in the juvenile court. The government is a party to the proceedings, seeking to prove that a child needs protection because of some action or inaction by the parents. The state may ask for removal of a child from parental custody ... and then propose a plan for reuniting the child with the parent. If the plan is not successfully completed, the child will not be returned to a parent and the state will seek a permanent home for the child in another setting." (Id. at p. 206, fns. omitted.)
By contrast, the "[f]amily court primarily provides a private dispute settlement function for its participants.... [F]amily court is designed to provide a forum in which litigants can resolve the issues relating to their marriage or other relationship which resulted in the birth of a child. Parents are presumed to be capable of making decisions regarding their children without state intervention or oversight. When parents cannot resolve child custody differences the court must decide these issues under state guidelines. Other interested parties may also assert rights regarding access to the child. [¶] In the family court forum, the state minimally intrudes into the custody decision making process. The government has an interest in the outcome, and has established a number of rules that the court must employ in deciding child custody issues. These rules are based principally upon policies established by the Legislature to promote the best interests of the child and to preserve parental sharing of rights and responsibilities." (Edwards, The Relationship of Family and Juvenile Courts in Child Abuse Cases, supra, 27 Santa Clara L.Rev. at p. 205, fns. omitted.)
[2] Contra Joyleaf W. is In re Kayla G. (1995) 40 Cal. App.4th 878, 880-888 [47 Cal. Rptr.2d 86] (hereafter sometimes Kayla G.). See footnote 3, post.

Generally, the Courts of Appeal have confined Anders and Wende to criminal appeals. (See, e.g., In re Olsen (1986) 176 Cal. App.3d 386, 389-392 [221 Cal. Rptr. 772] [holding that Anders and Wende are applicable to criminal appeals of misdemeanors as well as felonies].) They have generally declined to reach into civil appeals. (See, e.g., Berger v. Godden (1985) 163 Cal. App.3d 1113, 1117, fn. 2 [210 Cal. Rptr. 109] [distinguishing Wende in the area of civil appeals]; Grillo v. Smith (1983) 144 Cal. App.3d 868, 873, fn. 3 [193 Cal. Rptr. 414] [same]; see also Adoption of Chad T. (1995) 39 Cal. App.4th 1107, 1108-1109 [46 Cal. Rptr.2d 147] [declining to extend Wende to appeals from a termination of parental rights under the Family Code, which is obtained by a private party and not the state]; cf. Ronald S. v. Superior Court (1995) 34 Cal. App.4th 1467, 1468-1469 [41 Cal. Rptr.2d 139] [declining to extend Wende to proceedings on a petition for "extraordinary relief" challenging a (presumably) adverse order under the juvenile court law].) Exceptions, however, are apparent. (See County of Madera v. Jacobson (1987) 194 Cal. App.3d 569, 570-573 [239 Cal. Rptr. 602] (per curiam) [purporting to extend Wende to paternity appeals]; Conservatorship of Besoyan (1986) 181 Cal. App.3d 34, 36-38 [226 Cal. Rptr. 196] (per curiam) [same as to conservatorship appeals]; Conservatorship of Susan T. (1994) 8 Cal.4th 1005, 1023 [36 Cal. Rptr.2d 40, 884 P.2d 988] (conc. and dis. opn. of Mosk, J.) [following Besoyan]; see also In re Adrian O. (1984) 155 Cal. App.3d 631, 635 [202 Cal. Rptr. 287] [appearing to assume that Wende is applicable to appeals from a termination of parental rights under the juvenile court law]; In re Edward S. (1982) 133 Cal. App.3d 154, 157-158 [183 Cal. Rptr. 733] [same as to appeals from an adjudication of juvenile delinquency under the juvenile court law]; In re Laylah K. (1991) 229 Cal. App.3d 1496, 1498, fn. 1 [281 Cal. Rptr. 6] [same]; In re Deon D. (1989) 208 Cal. App.3d 953, 955-956 [256 Cal. Rptr. 490] [same].)
[3] In accord with Brian B. is In re Andrew B. (1995) 40 Cal. App.4th 825, 828-861 [47 Cal. Rptr.2d 604] (hereafter sometimes Andrew B.); see also In re Jesse H. (1981) 126 Cal. App.3d 1048, 1049 [178 Cal. Rptr. 205] (appearing to assume that Wende is applicable to appeals from a declaration of child dependency under the juvenile court law); In re Adrian O., supra, 155 Cal. App.3d at page 635 (same). Contra is In re Benjamin E. (1996) 44 Cal. App.4th 71, 74-77 [51 Cal. Rptr.2d 584]. One panel of Division Three of the Fourth Appellate District of the Court of Appeal decided Andrew B. Another panel of the same division of the same appellate district decided Kayla G. on the same day. (See fn. 2, ante.) The Andrew B. court took a broader view of what may be called Anders's "applicability" and "extendibility." The Kayla G. court took a narrower view.
[4] The Anders court was not unanimous. In dissent, Justice Stewart, joined by Justice Black and Justice Harlan, found the "no-merit letter" procedure "free of constitutional error." (Anders v. California, supra, 386 U.S. at p. 747 [18 L.Ed.2d at p. 500] (dis. opn. of Stewart, J.).) He characterized the "requirement ... imposed by the [majority]" as "quixotic" and observed that it could be explained "only upon the cynical assumption that an appointed lawyer's professional representation to an appellate court in a `no-merit' letter is not to be trusted. That is an assumption to which I cannot subscribe. I cannot believe that lawyers appointed to represent indigents are so likely to be lacking in diligence, competence, or professional honesty." (Id. at pp. 746-747 [18 L.Ed.2d at pp. 499-500] (dis. opn. of Stewart, J.).)
[5] "The lesson of our cases," explained the Evitts court, "is that each Clause triggers a distinct inquiry: `"Due Process" emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. "Equal Protection," on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable.' In cases like Griffin and Douglas [and Anders], due process concerns were involved because the States involved had set up a system of appeals as of right but had refused to offer each defendant a fair opportunity to obtain an adjudication on the merits of his appeal. Equal protection concerns were involved because the State treated a class of defendants  indigent ones  differently for purposes of offering them a meaningful appeal. Both of these concerns were implicated in the Griffin and Douglas [and Anders] cases and both Clauses supported the decisions reached by this Court." (Evitts v. Lucey, supra, 469 U.S. at p. 405 [83 L.Ed.2d at pp. 835-836], fn. omitted.)

It may be noted in passing that the "due process concerns" identified by the Evitts court are indeed expressed in Griffin  but only in Justice Black's plurality opinion  and are in fact referred to in Douglas  but only by implication.
[6] The McCoy court noted that terms such as "`wholly frivolous' and `without merit' are often used interchangeably in the Anders-brief context. Whatever term is used to describe the conclusion an attorney must reach as to the appeal before requesting to withdraw and the court must reach before granting the request, what is required is a determination that the appeal lacks any basis in law or fact." (McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at pp. 438-439, fn. 10 [100 L.Ed.2d at p. 453].)
[7] We recognize that, since the day it was decided, Anders has been subjected to "consistent and severe criticism." (Note, The Right to Counsel in "Frivolous" Criminal Appeals: A Reevaluation of the Guarantees of Anders v. California (1988) 67 Tex. L.Rev. 181, 212.) That criticism, of course, does not affect its authority.
[8] In State v. Balfour (1991) 311 Or. 434 [814 P.2d 1069] (hereafter sometimes Balfour), the Oregon Supreme Court held to the contrary: "We conclude ... that the federal constitution requires an Anders brief only when counsel seeks to withdraw." (Id. at p. 450 [814 P.2d 1069, 1079], original italics; see id. at pp. 450-451 [814 P.2d at pp. 1079-1080].) It erred thereby. As stated in the text, Anders seeks to ensure that "counsel acts in the role of an active advocate in behalf of his client" (Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498], italics added)  not that he merely appears to so act.
[9] Accord, State v. Balfour, supra, 311 Or. at pages 436, 437, and 448-449 [814 P.2d at pages 1071-1072 and 1078-1079]. In Balfour, the court held that the "ethical discussions" by the United States Supreme Court in Anders and its progeny "are not themselves constitutionally based" (id. at p. 448, fn. 4 [814 P.2d at p. 1078]) and hence do not bind the states (id. at p. 448 [814 P.2d at p. 1078]). It noted that that court "has vacillated among the conclusions that an attorney may seek to withdraw, should seek to withdraw, or has a duty to seek to withdraw." (Id. at p. 448, fn. 5 [814 P.2d at p. 1078], original italics; compare Penson v. Ohio, supra, 488 U.S. at p. 80 [102 L.Ed.2d at pp. 308-309] [may seek to withdraw (semble)]; with Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498] [should seek to withdraw]; and McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at pp. 436-437 [100 L.Ed.2d at pp. 451-453] [duty to seek to withdraw].)

Wende appears to assume that, as a matter of professional responsibility in California, appointed appellate counsel should not actively prosecute the appeal if he believes it to lack any basis in law or fact. (Accord, McCoy v. Court of Appeals of Wisconsin, supra, 486 U.S. at p. 436 [100 L.Ed.2d at p. 452] [stating that "[a]n attorney ... is ... under an ethical obligation to refuse to prosecute a frivolous appeal"]; but see 4 ABA Standards for Criminal Justice, std. 21-3.2 (2d ed. 1980) commentary, p. 21.42 ["When a client seeks to prosecute an appeal against the advice of counsel that there is no hope for success, counsel cannot deceive or mislead the court on behalf of the client. If the ground upon which the client seeks relief lacks any legal support or is contravened by existing law, counsel may nonetheless argue for extension, modification, or reversal of existing law."].)
[10] An issue arose at the time Wende was decided (see People v. Wende, supra, 25 Cal.3d at pp. 443-447 (conc. and dis. opn. of Clark, J.)), and continues to this day (see, e.g., People v. Hackett (1995) 36 Cal. App.4th 1297, 1300-1312 [43 Cal. Rptr.2d 219]), as to whether Wende is at variance with Anders. Anders speaks of a "full examination of all the proceedings" by the appellate court "to decide whether the case is wholly frivolous." (Anders v. California, supra, 386 U.S. at p. 744 [18 L.Ed.2d at p. 498].) For its part, Wende refers to the appellate court's "review of the entire record" for that purpose. (People v. Wende, supra, 25 Cal.3d at pp. 438, 440, 441, 442, 443.) The issue of Wende's conformity with Anders in this regard is not presented in this cause. We leave its resolution to another day.
[11] To the extent that it is to the contrary, Andrew B. is in error for the reasons stated in the text. It takes the position that Anders's "prophylactic" procedures are applicable to appointed appellate counsel's representation of any indigent in his first appeal as of right. (See In re Andrew B., supra, 40 Cal. App.4th at p. 857, fn. 23 [stating that "the right to appointed [appellate] counsel compels the right to Anders/Wende review"].) It is wrong. (See Comment, Termination of the Attorney-Client Relationship: How Far Must Anders Compliance Go?: A Survey of Decisions (1991) 16 J. Legal Prof. 229, 239 [stating that "it appears there is no Anders compliance required in the civil context"]; but see id. at pp. 230-237 [to opposite effect, but without analysis, as to the so-called "quasi-criminal" setting, which is assumed to include state-initiated termination of parental rights]; State v. Balfour, supra, 311 Ore. at p. 436 [814 P.2d at p. 1071] [appearing to assume that Anders applies whenever "`an indigent has a right under the United States Constitution to appointed counsel'"].)
[12] To the extent that it is to the contrary, Andrew B. is in error for the reasons stated in the text. It adopts the view that Anders's "prophylactic" procedures are dependent for their applicability on the existence of any right to the assistance of appellate counsel appointed by the state belonging to any indigent in his first appeal as of right  at least when a "fundamental interest" is implicated. (See In re Andrew B., supra, 40 Cal. App.4th at pp. 828, 830-831, 832, 853, 854, 857, fn. 23, 861.) It does so without support. In addition, it suggests that the "right ... established in Douglas" (Pennsylvania v. Finley, supra, 481 U.S. at p. 554 [95 L.Ed.2d at p. 545]), which is based on the Fourteenth Amendment's due process and equal protection clauses, belongs to each and every indigent in any first appeal as of right, at least when a "fundamental interest" is implicated, and not solely to the indigent criminal defendant. (See In re Andrew B., supra, 40 Cal. App.4th at pp. 850, 854.) It is without support here as well.
[13] To the extent that it is to the contrary, Andrew B. is in error for the reasons stated in the text. It expresses the understanding that Anders's "prophylactic" procedures are designed to protect any right to the assistance of appellate counsel appointed by the state belonging to any indigent in his first appeal as of right. (See In re Andrew B., supra, 40 Cal. App.4th at pp. 830-831, 850, 852, 853, 854.) That is simply not the case.

In In re Welfare of Hall (1983) 99 Wn.2d 842, 846 [664 P.2d 1245, 1248], the Washington Supreme Court expressly concluded that "Anders is [not] applicable to appointed [appellate] counsel in child deprivation proceedings." Its reasoning focused on a state-obtained decision adversely affecting an indigent parent as to parental status. It was broad enough, however, to include a decision of this sort adversely affecting such a parent as to child custody. (Accord, In re V.E. (1992) 417 Pa.Super. 68, 79 [611 A.2d 1267, 1273] [indigent parent's appeal from a state-obtained decision adversely affecting parental status: "the principles set forth in Anders are applicable only to criminal cases" (original italics)].)
We recognize that the Andrew B. court and courts of sister states have held or stated to the contrary. (See, e.g., In re Andrew B., supra, 40 Cal. App.4th at p. 830 [concluding broadly that "Anders/Wende procedures are required" whenever "there is a right to appointed [appellate] counsel," apparently no matter what its source, at least when a "fundamental interest" is implicated, including appeals by indigent parents from a declaration of child dependency or a termination of parental rights under the juvenile court law]; id. at pp. 828, 830-831, 832, 853, 854, 857, fn. 23, 861 [to same effect]; Matter of Keller (1985) 138 Ill. App.3d 746, 748 [93 Ill.Dec. 190, 486 N.E.2d 291, 292] [concluding that the "Anders procedure is applicable" to an indigent parent's appeal from a state-obtained decision adversely affecting parental status]; see, e.g., Morris v. Lucas County Children Serv. Bd. (1989) 49 Ohio App.3d 86, 87 [550 N.E.2d 980, 981] [implying that the "procedures enunciated in Anders ... are applicable to appeals involving the termination of parental rights"]; see also Jones v. Department of Human Resources (1980) 155 Ga. App. 371, 371 [271 S.E.2d 27, 28] [indigent parent's appeal from a state-obtained decision adversely affecting child custody: "[a]ssuming that" Anders "has any application to civil cases"].) Their analysis falters on that presented in the text.
To the extent that any decision of ours or of the Courts of Appeal states or implies that the applicability of Anders goes beyond what is described in the text, it is disapproved.
[14] To the extent that it is to the contrary, Andrew B. is in error for the reasons stated in the text. See footnote 12, ante.
[15] We understand the "liberty interests" of the indigent parent identified in the text to include whatever right of privacy he may have.
[16] We understand the "liberty interests" of the child identified in the text to include whatever right of privacy he may have.
[17] This is not to say that the balance between the indigent parent's "liberty interest ... in the care, custody, and management of" his child (Santosky v. Kramer, supra, 455 U.S. at p. 753 [71 L.Ed.2d at p. 606]) and the child's "liberty interest[]" (id. at p. 754, fn. 7 [71 L.Ed.2d at p. 606]) in a "normal family home" (id. at p. 759 [71 L.Ed.2d at p. 610]) or at least one that is "stable" (In re Marilyn H., supra, 5 Cal.4th at p. 306) is the same at the stage at which the parent appeals from a declaration of child dependency under the juvenile court law as it is at the stage at which the parent appeals from the termination of parental rights under the same law. It is not. At the former stage, the balance verges toward the parent, whereas at the latter toward the child. (See In re Marilyn H., supra, 5 Cal.4th at pp. 306-310.) But in the parent's appeal from a declaration of child dependency, as in his appeal from the termination of parental rights, the appealed-from decision, which is predicated on detriment he caused or allowed his child to suffer, is presumptively accurate and just.
[18] To the extent that it is to the contrary, Andrew B. is in error for the reasons stated in the text. It takes the position that the requirement of fundamental fairness contained in the Fourteenth Amendment's due process clause does in fact compel imposition of Anders's "prophylactic" procedures. (See In re Andrew B., supra, 40 Cal. App.4th at pp. 852-853.) But it does not give support therefor. It is immaterial whether an indigent parent has a right, under the United States Constitution, to the assistance of appointed appellate counsel in his appeal from a state-obtained decision adversely affecting child custody or parental status, whether through the Fourteenth Amendment's due process clause or otherwise. The existence of such a right does not affect the balance struck in the text.

A parallel argument based on the due process clause of article I, section 7, subdivision (a), of the California Constitution fails for parallel reasons. True, analysis under the state constitutional provision would take into account not only the three elements comprising the private interests of the indigent parent and his child (including whatever rights of privacy they may have), the state's interests, and the risk that the absence of Anders's "prophylactic" procedures would lead to an erroneous resolution of the parent's appeal  all as indicated in the text  but also, under the first, "the dignitary interest in informing individuals of the nature, grounds and consequences of the [governmental] action [in question] and in enabling them to present their side of the story before a responsible governmental official...." (People v. Ramirez (1979) 25 Cal.3d 260, 269 [158 Cal. Rptr. 316, 599 P.2d 622] (plur. opn. by Mosk, J.); accord, id. at pp. 278-279 (conc. and dis. opn. of Bird, C.J.); In re Malinda S. (1990) 51 Cal.3d 368, 383 [272 Cal. Rptr. 787, 795 P.2d 1244].) That "dignitary interest," however, could not command the procedures in question, which do not serve the underlying values of notice and participation and are, in any event, practically "unproductive."
[19] To the extent that it is to the contrary, Andrew B. is in error for the reasons stated in the text. It does not even attempt to show that indigent criminal defendants and indigent parents are similarly situated for purposes of the Fourteenth Amendment's equal protection clause.

A parallel argument based on the equal protection clause of article I, section 7, subdivision (a), of the California Constitution fails for parallel reasons. Insofar as it is contra, Andrew B. is erroneous. Its invocation of state constitutional law is mere afterthought. (See In re Andrew B., supra, 40 Cal. App.4th at p. 861.)
[20] See generally, Welfare and Institutions Code section 200 et seq.; id., section 202, subdivision (d) (declaring that "[j]uvenile courts and [related] public agencies ... shall consider ... the best interests of the [child] in all deliberations").

See specifically Welfare and Institutions Code section 395 (declaring that appeals from a judgment or order declaring child dependency or terminating parental rights under the juvenile court law "shall have precedence over all other cases in the court to which the appeal is taken"); id., section 366.26, subdivision (l) (providing for expedited review of judgments or orders terminating parental rights or establishing guardianship under the juvenile court law, specifically, Welfare and Institutions Code section 366.26); California Rules of Court, rule 39.1B (implementing Welfare and Institutions Code section 366.26, including subdivision (l) thereof).
[21] In In re Welfare of Hall, supra, 99 Wn.2d at page 846 [664 P.2d at page 1248], the court impliedly concluded that Anders should not be extended "to appointed [appellate] counsel in child deprivation proceedings." Its reasoning focused on a state-obtained decision adversely affecting an indigent parent as to parental status. It was broad enough, however, to include a decision of this sort adversely affecting such a parent as to child custody.

We recognize that courts of sister states may be read to suggest the contrary. (E.g., J.K. v. Lee County (Ala. Civ. App. 1995) 668 So.2d 813, 816 [indigent parent's appeal from a state-obtained decision adversely affecting child custody: "we extend the procedures set forth in Anders ... to civil cases, but limit its [sic] use to those civil cases in which an indigent client has a court-appointed attorney as authorized by statute"]; In re V.E., supra, 417 Pa.Super. at p. 83 [611 A.2d at p. 1275] [indigent parent's appeal from a state-obtained decision adversely affecting parental status: "appointed counsel seeking to withdraw representation must submit an advocate's brief, as contemplated in Anders" (original italics)]; Matter of Keller, supra, 138 Ill. App.3d at p. 748 [486 N.E.2d at p. 292] [semble: indigent parent's appeal from a state-obtained decision adversely affecting parental status]; see, e.g., Morris v. Lucas County Children Serv. Bd., supra, 49 Ohio App.3d at p. 87 [550 N.E.2d at p. 981] [same].) Any such suggestion, however, is without support.
Insofar as any decision of ours or of the Courts of Appeal expressly or impliedly extends Anders beyond what is described in the text, it is disapproved.
[22] We note in passing that the Andrew B. court read certain language in Wende to bar dismissal of an appeal in favor of decision on the merits. (In re Andrew B., supra, 40 Cal. App.4th at p. 844.) We do not. For the reasons stated in the text, we believe that dismissal is permissible.

We also note in passing that, under Anders, none of the briefs submitted by appointed appellate counsel in the Court of Appeal would have been sufficient. As stated, an Anders brief must contain law as well as facts. In the words of Anders itself, it must have "ready references not only to the record, but also to ... legal authorities...." (Anders v. California, supra, 386 U.S. at p. 745 [18 L.Ed.2d at p. 498].) In Feggans's paraphrase, it must not only "set forth a statement of the facts with citations to the transcript," but also "discuss the legal issues with citations of appropriate authority...." (People v. Feggans, supra, 67 Cal.2d at p. 447.) Although each of the briefs in question has facts, none has law.
[1] This court has not decided whether the state or federal Constitutions entitle indigent parents to representation when appealing decisions adversely affecting their parental rights. (In re Bryce C. (1995) 12 Cal.4th 226, 235 [48 Cal. Rptr.2d 120, 906 P.2d 1275]; In re Jacqueline H., supra, 21 Cal.3d 170, 178.) Because I conclude that the Legislature intended the appellate courts to adopt the Anders/Wende procedures to protect the statutory right to counsel of indigent parents, I need not consider whether those procedures are necessary to implement any constitutional right to counsel on the part of indigent parents.