Filed 3/7/13  In re J.F. CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.F., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>I.F.,<br><br>Defendant and Appellant. | F065786<br>(Super. Ct. No. 11CEJ300218-1)<br><br>**O P I N I O N** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Fresno County.  Timothy A. Kams, Judge.

Hana B. Balfour, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Wiseman, Acting P.J., Levy, J., and Kane, J.

I.F. (mother) has challenged juvenile court dispositional orders (Welf. & Inst. Code, §§ 361 & 361.5 subd. (b)(6)), among others, pertaining to her nine-year-old daughter, J.[1]  After reviewing the appellate record, mother's court-appointed appellate counsel informed this court she could find no arguable issues to raise on mother's behalf. Counsel requested and this court granted leave for mother to personally file a letter setting forth a good cause showing that an arguable issue of reversible error did exist.  (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844.)

Mother makes numerous allegations about respondent Fresno County Department of Social Services (the department), the superior court, and those appointed to represent her.  She assumes this court may reconsider and thoroughly investigate the facts relating to this case.

However, as discussed below, mother misunderstands the role of an appellate court and her responsibility as an appellant.  None of mother's allegations constitute a good cause showing that there is any arguable issue of reversible error.  (*In re Phoenix H., supra,* 47 Cal.4th at p. 844.)  Consequently, we will dismiss her appeal.

## PROCEDURAL AND FACTUAL SUMMARY

This case commenced in October 2011 after then eight-year-old J. (child) wrote in her school journal that she had been spanked.  This led to the discovery of marks, bruising, and welts on the child's leg.  As a result, mother was arrested.[2]  Although mother provided relatives' names for placement, she did not have any contact information.  Consequently, the department detained the child and initiated the underlying dependency proceedings.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    According to the record, mother was still awaiting trial on felony corporal punishment and child endangerment charges.

2

Mother admitted she spanked the child with a belt as a means of disciplining the child, but urged that such discipline was not abusive. It was meant to get the child's attention. Mother claimed she only struck the child with the belt eight times, "a swat for each year" of the child's age.

By contrast, the child described mother striking her on this occasion 40 times with the belt for using a short pencil to do her homework. According to the child, this was not the first time mother injured her. The child also reported she was very afraid of mother and never wanted to see her again. According to the child, mother had made statements that she would kill the child. Mother said the child told lies.

Following a two-day contested jurisdictional hearing in February 2012, the court found the child suffered serious physical harm inflicted non-accidentally by mother, as a result of mother punishing the child with a belt. Although the court also set a March 2012 dispositional hearing to determine whether it was necessary to adjudge the child a juvenile dependent and remove her from mother's custody, among other issues, the dispositional hearing was repeatedly postponed until September 2012.

In the interim, at least two attorneys appointed to represent mother declared a conflict and were permitted to withdraw. This led to lengthy continuances to enable newly-appointed counsel to prepare.

In addition, the department filed a subsequent petition (§ 342) in which it alleged the child had suffered serious emotional damage as evidenced by her severe anxiety, depression, withdrawal and untoward aggressive behavior toward herself and others as a result of mother's conduct. The child repeatedly reported mother abused her, threatened to kill her, and told her she (mother) wished the child had never been born. Consequently, the child exhibited extreme hypervigilance and fear when discussing her possible return to mother's care and became so overwhelmed with emotion that she had both threatened and attempted to harm herself.

3

Pending a hearing on the subsequent petition, the court in May 2012 ordered therapeutic supervised visits between mother and the child. Once the child was notified of this, however, her symptoms significantly increased in frequency and severity to the extent that she threatened to harm herself if she were forced to have contact with mother.

As a consequence, the department filed an ex parte request to suspend the court's visitation order. The court made "an interim order only" to suspend its visitation order until a hearing could be held in mid-June. "Feel[ing] betrayed" by the department, her attorney, and the court, mother filed on her own a request to reinstate the visitation order, among other things. Hearing on the department and mother's competing visitation requests was delayed, however, when mother's counsel filed first a peremptory challenge to the judge who entered the interim order, and later still, declared a conflict of interest and requested yet another attorney be appointed to represent mother.

By early August, the department changed its recommendation from removal of the child from parental custody and reunification services for mother to a recommendation for no services for mother. According to the department, mother met the criteria for no services under section 361.5, subdivision (b)(6), in that the child had been adjudicated a dependent under section 300 as a result of the infliction of severe physical harm to her by mother and it would not benefit the child to pursue reunification with mother.

Notably, mother had participated in parenting, mental health and domestic violence services that the department had offered her since the fall of 2011. Yet, she still maintained the only reason hitting the child was considered wrong was because society labeled it as such. In her view, the entire situation had been blown out of proportion.

The increasing number of legal issues confronting the court led the parties to lengthen their time estimate for a contested hearing on the subsequent petition, the competing visitation requests, and the dispositional proceedings. This, in turn, led to

4

further delay.  Meanwhile, mother made an unsuccessful *Marsden* motion against her latest attorney, Brent Woodward.

By the time the hearing eventually commenced in September, mother's counsel decided to argue the evidence that was in the record and submit the matter.  Mother's counsel and the attorneys for the other parties identified the numerous reports that had been filed in the six-month interim on which they submitted the case.[3]  Following the court's review of those reports and lengthy arguments by the various attorneys, the court issued its ruling.

The court found the allegations in the subsequent petition true, noting the significant evidence provided primarily by the child's therapist.  Next, the court found clear and convincing evidence to remove the child from mother's custody.  The court then spoke at length and made factual findings to support its decision to deny mother reunification services pursuant to section 361.5, subdivision (b)(6).  In the process, the court remarked it "strongly" disagreed with mother's position that she was bonded with her child and that the system imposed unnecessary and arbitrary roadblocks to her reuniting with the child.  As for visitation, the court found it was clear visitation at that time would be inappropriate.  It quoted from correspondence by the child's therapist in this regard and then continued the order suspending visitation.

## DISCUSSION

Mother alleges in conclusory style that:  (1) counsel was not effective in informing her of her rights and responsibility to respond to the court in a timely manner; (2) the September court proceedings violated several statutes including 42 United States Code section 12203, a federal prohibition against retaliation and coercion; (3) attorney Woodward did not permit her to testify; (4) the court and attorney Woodward denied her

---

**3**     Many of those reports are not contained in the appellate record.

the opportunity to present factual supportive documents and evidence for her defense; and (5) court officials and department staff committed perjury and consistently misrepresented themselves, submitted fabricated documents and thus hindered her right to due process. Mother offers no details or record citations to support any of these claims. Although this court granted mother additional time to file a letter detailing these allegations, mother instead asked us to reconsider and conduct a thorough investigation of the facts and made numerous, additional unsupported factual claims.

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is appellant's burden to overcome the presumption of correctness and to show reversible error. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.) To do so, the appellant is responsible for providing an adequate record demonstrating error, raising claims of reversible error or other defect and presenting argument and authority on each point made. (*In re Sade C*. (1996) 13 Cal.4th 952, 994; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.) If an appellant does not do so, the appeal should be dismissed. (*In re Sade C*., *supra*, 13 Cal.4th at p. 994.) In a juvenile dependency appeal such as this, the appellate court is not required to review the entire record (*In re Phoenix H., supra,* 47 Cal.4th at p. 838), as mother otherwise assumes.

This appeal is not mother's opportunity to try or defend the case anew. Issues of fact and credibility are matters for the trial court alone. (*In re Amy M.* (1991) 232 Cal.App.3d 849, 859-860.) On appeal, all conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the decision, if possible. (*Id*. at p. 859.) If alleged facts were not presented to the trial court, they are disregarded by the court of appeal. (*Warren-Guthrie v. Health Net* (2000) 84 Cal.App.4th 804, 808, fn. 4, disapproved on another ground in *Cronus Investments, Inc. v. Concierge Services*

(2005) 35 Cal.4th 376, 393, fn. 8.) An appellate court may not reweigh or express an independent judgment on the evidence. (*In re Laura F.* (1983) 33 Cal.3d 826, 833.)

Having failed to make an arguable showing of reversible error, mother is not entitled to this court's further review.

## DISPOSITION

This appeal is dismissed.