Filed 5/22/15  In re F.C. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re F.C. and D.C., Persons Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY HEALTH AND SOCIAL SERVICES,<br><br>         Plaintiff and Respondent,<br><br>v.<br><br>F.C. et al.,<br><br>         Defendants and Appellants. | A141496, A141828, A143095, A141925, A142089, A142474<br><br>(Solano County<br>Super. Ct. Nos. J42310 & J42440) |

In these consolidated appeals, appellants F.C. (Father) and M.C. (Mother) appeal from various orders of the juvenile court made in dependency proceedings involving their two children.  We appointed counsel for each parent.  Both counsel filed opening briefs informing us that they were unable to find any arguable issues.  They requested that we undertake review under *In re Sade C.* (1996) 13 Cal.4th 952 (*Sade C.*) and *In re Phoenix H.* (2009) 47 Cal.4th 835 (*Phoenix H.*), and exercise our discretion to permit the parents personally to submit supplemental briefs.  Father has filed a supplemental brief.[1]

_____

[1]  Mother's appeals as to case Nos. A142089 and A142474 have already been dismissed, as to her only, by orders dated October 9, 2014, and November 10, 2014.  As to the four other appeals, Mother was given the opportunity to submit an additional letter or brief identifying any contentions she wished to raise on appeal, which she has not done.  Accordingly, her remaining appeals will be dismissed as abandoned.

Neither Father's brief nor our independent review of the record reveals any arguable issues.[2]  Accordingly, we dismiss the appeals.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    *Appeal No. 141496*

On April 18, 2013, the Contra Costa County Children & Family Services Bureau (Bureau) filed a Welfare and Institutions Code section 300[3] petition on behalf of the parents' two-year-old son F.C., alleging that Mother had failed to protect the child from exposure to domestic violence, thereby placing the child at risk of harm.  The petition alleged that the previous week Father had kicked Mother, who was then 26 weeks pregnant, in the stomach, resulting in stomach pain and vaginal bleeding.  He had also punched her in the chest and back, held her against the wall by her neck, forced her to drink his urine, and had hit, pushed, and struck her approximately once a week for the past two years.  The petition also alleged Mother had mental health issues that put the child at risk, in that "she hears voices and sees things that are not there."

On April 19, 2013, F.C. was ordered detained.

On September 11, 2013, Father filed a motion to dismiss the petition.  He denied engaging in domestic violence and asserted neither he nor Mother suffered from mental illness such that would cause F.C. to suffer harm.

After several delays and continuances, the jurisdictional hearing was held on October 7, 2013.  Police officer Daniel Dansie testified that he had contact with Mother

---

[2] In *Phoenix H.,* the Supreme Court reiterated that counsel's filing of a "no issues statement" in an appeal in a juvenile dependency proceeding does not trigger independent review by the appellate court, in contrast to the filing of a *Wende* brief (see *People v. Wende* (1979) 25 Cal.3d 436) in a criminal case.  (*Phoenix H., supra,* 47 Cal.4th at pp. 841-842.)  Rather, once counsel reviews the record on appeal and files such a statement, the appellate court may rely on it, and may properly dismiss the appeal.  (*Id.* at p. 842 ["we held [in *Sade C., supra,* 13 Cal.4th at p. 994] that the Court of Appeal could dismiss an indigent parent's appeal if appointed counsel filed a brief raising no arguable issues"].)

[3] All further statutory references are to the Welfare and Institutions Code except as otherwise indicated.

2

for several days during the week of April 15, 2013, after an initial contact on a report of domestic violence. Mother told him Father frequently engaged in acts of violence towards her, including hitting, pushing, and shoving. F.C. was present in the home when these acts occurred, though he did not personally witness them.

On one occasion, Father reportedly kicked Mother in the stomach when she was noticeably pregnant. Mother divulged this information when she was away from home, during an appointment for F.C. at a health clinic. Because Father was very controlling, she did not feel she could have reported the incident earlier. At that time, she stated she had been experiencing contractions, pain, and vaginal bleeding every day since the incident. Later, she discharged herself from the hospital and told Dansie that she was fine; however, he received information to the contrary from Father's brother and from hospital staff. He was told by family members that F.C. had been born prematurely with a heart defect, which required ongoing medical attention. Dansie believed Mother was unable to provide for F.C. due to her inability to make coherent, sound decisions and because of her statements regarding domestic violence. After Dansie was excused, the matter was continued again.

The hearing resumed on October 23, 2013. Mother's counsel moved for a directed verdict dismissing the petition, asserting the Bureau had failed to prove domestic violence or Mother's mental health issues had placed F.C. at risk. The motion was denied.

Eleanor Walker, a social caseworker, testified she was not aware of any additional reports of domestic violence since the petition was filed. She had not been able to meet with Mother since receiving the case. Walker reported both parents were engaged in visitation and the visits had gone well. Mother was appropriate with F.C. during her visits. The parents also brought food, diapers, medication, and other supplies for their son.

Walker's communication with Mother was by e-mail only. Walker did not believe the parents had been cooperative with the Bureau. When she offered them reunification services, Mother said she did not feel she needed them. Father did not respond at all. She

learned the parents had moved from Concord to Dixon in August 2013. She was unable to arrange to meet the parents in their new home. Social workers in Solano County also had not been successful in contacting them at the Dixon location.

Lindsay Kennedy, a social worker supervisor, testified Mother had reported domestic violence occurred at least weekly for the past two years. Family members reported Mother had mental health issues. The paternal grandmother reported that both parents had severe mental disabilities. The Bureau also substantiated an earlier allegation that Mother had neglected F.C.'s medical needs.

Father testified and denied committing any acts of domestic violence. Mother testified that she had never been diagnosed with any mental health disorder and had never been detained in a psychiatric hospital. She had never taken any medications related to mental illness. She was aware of the domestic violence allegations but denied that Father had ever hit or kicked her. She denied telling Dansie that she was a victim of domestic violence, and also denied reporting to anyone during her son's medical appointment that Father had ever punched or kicked her.

The juvenile court denied Father's motion to dismiss the petition. The court found Father and Mother lacked credibility, in part because they had not allowed social workers into their home and because Mother did not cooperate in meeting with the social workers. The court concluded F.C was described by section 300, subdivision (b), finding the allegations concerning domestic violence to be true, including the allegation that Father kicked Mother in the stomach. The court also found true an allegation that Mother's mental health issues placed the child at risk, in part because her behavior in court, while respectful, was "bizarre."[4]

At the disposition hearing, the Bureau requested a continuance due to new disclosures about domestic violence and reports that Father had been involuntarily

---

[4] The juvenile court had previously dismissed two other allegations in the petition on October 7, 2013.

4

committed to a mental institution four times. The hearing was continued for a contested disposition.

On December 26, 2013, the matter was ordered transferred to Solano County.

On January 14, 2014, the juvenile court in the Solano County continued the case to February 18 for a transfer-in report from the Solano County Health and Social Services Department (Department). The court accepted both parents' waiver of appointed counsel, warning them that they were "making a mistake."

On February 10, 2014, Father filed a section 388 petition for a change of order, asking that F.C. be placed with the parents or with a relative because F.C. had suffered injuries while in his foster home.[5]

On February 18, 2014, the parents moved to disqualify the judge, both peremptorily and for cause, based on the January 14, 2014 continuance. The court denied the motion to disqualify for cause because the motion was not timely and did not assert grounds for disqualification. The peremptory challenge was denied as untimely. The case was set for a March 17, 2014 hearing on the change order request and the contested disposition hearing.

On February 26, 2014, this court denied a petition for writ of mandate and request for an immediate stay of trial court proceedings.

On February 28, 2014, the parents filed a request to terminate jurisdiction.

On March 17, 2014, the court denied the request to terminate jurisdiction and dismiss the case. Relying on *In re Richard H.* (1991) 234 Cal.App.3d 1351 and *Jeff M. v. Superior Court* (1997) 56 Cal.App.4th 1238, the court found dismissal was not the proper remedy for a case that goes beyond the six months specified by section 352, subdivision

---

[5] Section 388, subdivision (a)(1) provides, "Any parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself or herself . . . through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court . . . to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."

(b).[6]  Rather, the remedy is to hold the hearing as quickly as possible.  The court informed the parents that the jurisdictional findings would not be relitigated.

At the disposition hearing, social worker Eleanor Walker was received as an expert in the areas of child welfare, social work, and domestic violence.  She testified that she was assigned as the social worker to this case in April 2013.  She did not meet the parents in person until August 2013.  She told them they would need to have a mental health assessment completed prior to consideration of their child being returned to them.  Mother indicated that she did not believe she needed services.  Walker made another attempt to offer services to them in October 2013, and explained to Mother that she would need to meet with a domestic violence liaison by herself.  Mother again stated that she did not feel she needed those services.  Walker also referred both parents to mental health services in December 2013 and scheduled an appointment for Mother to meet with the domestic violence liaison.  Mother did not attend the appointment and the parents did not participate in any mental health assessments.

Walker testified that visitations with F.C. and the parents were appropriate.  She did not authorize unsupervised visitation because the parents had not engaged in any services.  Reports that the child was being abused in foster care were investigated and determined to be unfounded.  Walker deemed foster care placement to be appropriate for the child.

Mother made at least three or four attempts to communicate that she was being physically harmed by Father.  In Walker's opinion, these statements were later recanted because Mother feared for her safety.  Mother had likely developed "learned

_____

[6] Section 352, subdivision (b) provides:  "Notwithstanding any other provision of law, if a minor has been removed from the parents' or guardians' custody, no continuance shall be granted that would result in the dispositional hearing, held pursuant to Section 361, being completed longer than 60 days after the hearing at which the minor was ordered removed or detained, unless the court finds that there are exceptional circumstances requiring such a continuance.  The facts supporting such a continuance shall be entered upon the minutes of the court.  In no event shall the court grant continuances that would cause the hearing pursuant to Section 361 to be completed more than six months after the hearing pursuant to Section 319."

helplessness" just to remain in the relationship. Walker would expect the domestic violence in this case to increase in severity over time without treatment or intervention. F.C. had reportedly been very aggressive towards other children while in foster care, which was of concern because it suggested he has been adversely affected by domestic violence in the home. Given that there had been no treatment or intervention to address the problem, she rated the adverse risk of returning F.C. to the home to be "extremely high." She explained to the parents that services were being offered with the goal of returning the child to them, but they did not appear to understand her.

On cross-examination, Walker stated that neither parent had disclosed domestic violence to her personally and Father had no convictions for domestic violence. The interactions she had observed between the parents and the child have been appropriate. She observed the parents with their younger child, D.C., and did not perceive any risk of imminent harm to that child. However, she was not the social worker responsible for that child.

Social worker Heather Walsh testified she conducted a home visit with the parents in Dixon in January 2014. She attempted to refer them to services but they stated they would not participate in services without a court order. She had recommended the parents take parenting classes and that Mother obtain domestic violence services. Mother did not appear at an assessment for domestic violence. At the same time, the parents repeatedly reported at visitation that the foster parent was abusing F.C. When the social workers were called to examine the child, no injuries were found, apart from typical age-appropriate injuries. She had never observed or received any information from any of her colleagues suggesting he was being abused in the foster home. She did not believe F.C. would be safe in his parents' home, and stated that an investigation was currently being conducted as to D.C.'s safety. The social worker had not been able to make contact and had requested a warrant to produce the child.

On March 24, 2014, after closing argument, the juvenile court denied the parents' request to change the court order. The court found there was no evidence to contradict

7

that the social workers had investigated the parents' claims of caretaker abuse and had concluded there was no abuse occurring.

As to disposition, the juvenile court noted that the Contra Costa court had already found that domestic violence had occurred and that Mother had mental health issues. Since the time of that hearing, parents had refused to accept services offered to mitigate the effects of those findings. The court continued F.C. as a dependent, finding clear and convincing evidence that there was a substantial danger to the child if he were returned home, and that removal from the parents' custody was necessary. The court ordered the Department to provide reunification services, and ordered the parents to participate in those services. The matter was set for a September 9, 2014 pre-permanency hearing in order to allow parents six months of reunification services.

On April 7, 2014, parents filed a notice of appeal from the findings and orders on jurisdiction and disposition. The notice included the April 19, 2013 detention order, the denials of his motions to disqualify the judge and to dismiss the proceedings, and denials of the section 388 petitions.

**B.    *Appeal No. A141828***

On April 17, 2014, the parents filed another section 388 petition seeking to change F.C.'s placement order. They again asserted F.C. had sustained injuries while his foster care home. They asked that the child be moved to a relative placement with Father's brother.

On May 7, 2014, the Department filed its response to the petition. The Department noted the court had made a finding on March 24, 2014, that any alleged injuries occurring prior to that date were not the result of abuse, but instead were typical childhood injuries. The response also expressed concerns that placement with Father's brother would be detrimental to the boy and could make it more likely that the parents would abduct the child.

On May 12, 2014, the juvenile court denied the petition after an evidentiary hearing. The court directed the Department to do a followup study for relative

8

placement. That same day, parents filed a notice of appeal from the order denying their petition.

## C.    *Appeal No. A141925*

On April 1, 2014, the Department filed a section 300 petition as to D.C., who was then eight months old. The petition alleged D.C. was at risk of harm based on the allegations sustained in the matter of his older brother F.C., as well as on the parents' failure to participate in any services to mitigate the risk to his sibling. (§ 300, subds. (b), (j).) The accompanying detention report noted the parents had attempted to obtain a restraining order against the assigned social worker in response to her efforts to interview the family.

On April 2, 2014, the parents did not appear at the detention hearing, although they had received notice. The juvenile court ordered D.C.'s detention and issued a protective custody warrant for the child, who had not yet been located. Services were ordered for both parents. The child was detained the following day.

On April 3, 2014, Mother filed a motion disqualify the juvenile court judge (the same judge presiding in F.C.'s case) pursuant to Code of Civil Procedure section 170.6. The parents also requested a rehearing of the detention proceeding, claiming they did not receive notice.

On April 4, 2014, the judge accepted the disqualification as to the matter involving D.C. D.C.'s case was transferred to a different judge.

On April 8, 2014, the parents filed a demurrer, a motion to set aside, and a motion to dismiss. They asserted they did not have adequate notice of the detention hearing and claimed the petition's allegations were without support.

On April 22, 2014, the new juvenile court judge denied another disqualification motion. The court also overruled the parents' demurrer and denied the motion to dismiss. The court granted the motion for rehearing on detention.

On April 25, 2014, the juvenile court ordered continued detention of D.C., finding it would be detrimental to his physical and emotional health to be returned. The Department's dependency petition was sustained.

9

On April 29, 2014, the parents filed another section 388 petition, requesting an order dismissing D.C's dependency case. They claimed circumstances had changed in that they had engaged in services and there were newly discovered relatives available for placement. They also asserted lack of notice, both as to them as well as to Indian tribes under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.).

At a contested disposition hearing held on May 9, 2014, the social worker testified that the parents had not attended any visits since D.C.'s detention. She recommended family reunification services rather than family maintenance services because of concerns that domestic violence could be continuing and because the parents had not yet chosen to participate in any services. The court adopted the Department's recommendations and also denied the section 388 petition.

On May 22, 2014, the parents filed a notice of appeal from the findings and orders made on April 2, April 8, April 22, and May 9, 2014.

### D.   *Appeal No. 142089*

On May 22, 2014, the parents filed another section 388 petition seeking to change the juvenile court's placement order for D.C., in order to have the child placed with a relative.

On June 5, 2014, the matter came before a judge who was not familiar with the case. The judge continued the hearing to a time when the original judge would be available. The parents filed a notice of appeal from the order continuing the hearing.

### E.   *Appeal No. 142474*

On June 23, 2014, the parents filed another motion to disqualify the judge in D.C.'s case, claiming he was prejudiced against them. The judge denied the motion.[7] The parents' section 388 petition regarding placement was consolidated for hearing with a similar petition filed by D.C.'s paternal grandmother.

A social worker testified that while the paternal grandmother met the licensing requirements for placement, the Department believed she was not trustworthy because

---

[7] A subsequent motion to disqualify the judge was stricken.

10

she had not been forthcoming about a domestic violence incident that occurred when F.C. was placed with her before. The social worker indicated that the paternal grandmother's brother had been approved for placement and the Department was planning to transition D.C. to his home.

Both 388 petitions were denied on the ground that the parties failed to meet their burden to prove a change in circumstances.

On July 2, 2014, the parents filed another section 388 petition, requesting that the case be transferred to Alameda County because they had recently moved to Oakland.

At the July 10, 2014 hearing, the parents explained they were required to move after D.C. was taken from their home. The court denied the motion without prejudice because the parents had not included their actual address in their request. That same day, the parents filed a notice of appeal from the court's orders denying their petitions and their disqualification motions.

### F.	*Appeal No. A143095*

On May 29, 2014, parents filed a section 388 petition asking that F.C. be placed with the paternal grandmother and seeking sanctions against the Department for disregarding the court's orders concerning relative placement. They also requested orders for unsupervised visits and for transportation assistance.

On June 3, 2014, the juvenile court denied the petition without hearing because it did not state new evidence or a change in circumstances. The court noticed it had not ordered placement of the child with a relative, but had ordered a followup and reconsideration of such placement.

On June 23, 2014, parents filed a section 388 petition asking that the dependency proceedings be dismissed as to F.C. because the conditions alleged to exist when the child was removed were no longer present. The petition was summarily denied.

On July 2, 2014, the parents filed another preemptory challenge against the judge in F.C.'s case. As in the case of D.C., they also filed a section 388 petition seeking to transfer the case to Alameda County.

On July 15, 2014, the juvenile denied the challenge as untimely. The court continued the hearing on the transfer petition to July 29 to give parents the opportunity to verify their new residence. When they did not appear at that hearing, the petition was denied.

On August 27, 2014, the parents revived their argument that the dependency petition's allegation regarding Mother's mental health issues failed to state a cause of action. They asked that the allegation be stricken and that the proceedings be dismissed.

On September 2, 2014, the motion was denied, the juvenile court concluding it did not have the power to review the findings of the Contra Costa County court. The court set a combined six-month and twelve-month review for September 9, 2014. The hearing was continued to October 27, 2014.

On September 9, 2014, the parents filed a notice of appeal from the order denying their motion to dismiss the proceedings. They also challenged the settings of the six and twelve month reviews on the same day, and asserted the Department failed to provide reasonable reunification services.

### G. *Consolidation*

We appointed appellate counsel to represent Father and Mother. On December 10, 2014, Mother's counsel filed a letter brief pursuant to *Phoenix H.*, *supra*, 47 Cal.4th 835 and *Sade C.*, *supra*, 13 Cal.4th 952, informing us that he had found no arguable issues. (See *Sade C.*, at pp. 981–982.) Father's counsel filed a similar brief on January 8, 2015, requesting us to exercise our discretion to permit Father to submit his own brief. As noted above, Mother has not filed a supplemental brief.

On February 17, 2015, Father submitted a supplemental brief in propria persona.

### DISCUSSION

We have reviewed Father's supplemental brief and, out of an abundance of caution, have also independently reviewed the record. Insofar as Father is attempting to appeal from the juvenile court orders denying his peremptory challenges, these orders are not subject to appeal. (Code Civ. Proc., § 170.3, subd. (d); see *People v. Hull* (1991) 1 Cal.4th 266, 268 [writ of mandate under Code Civ. Proc., § 170.3, subd. (d), is the

exclusive means by which a party may seek review of an unsuccessful peremptory challenge against a trial judge].)

With respect to the remainder of his arguments, Father complains that he did not receive adequate notice of the dependency proceedings. He also claims the judge in F.C.'s case lost jurisdiction after he disqualified himself in D.C.'s case. Father also asserts the jurisdiction/disposition findings as to F.C. are not supported by substantial evidence, and complains that the Department failed to tailor reunifications services to "the specific needs of the disabled parents." Our review has confirmed what Father's and Mother's counsel determined; i.e., nothing in the record indicates that an arguable issue exists for our consideration, and nothing in Father's supplemental brief changes that result.

These appeals are not Father's opportunity to try to defend the case anew. Issues of fact and credibility are matters for the trial court alone. (*In re Amy M.* (1991) 232 Cal.App.3d 849, 859–860.) On appeal, all conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the decision, if possible. (*Id.* at p. 859.) If alleged facts were not presented to the trial court, they are disregarded by the Court of Appeal. (*Warren-Guthrie v. Health Net* (2000) 84 Cal.App.4th 804, 808, fn. 4, disapproved on another ground in *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393, fn. 8.) An appellate court may not reweigh or express an independent judgment on the evidence. (*In re Laura F.* (1983) 33 Cal.3d 826, 833.)

Here, substantial evidence in the form of testimony from the social workers supports the juvenile court's jurisdiction and disposition findings. The record shows that both parents had a documented history of domestic violence and mental health concerns. While both social service agencies involved in this case offered to provide services to help ameliorate these serious issues and concerns and reunify the family, the parents chose not to participate in any of these services. Father's remaining contentions are meritless. Having failed to make an arguable showing of reversible error, he is not entitled to this court's further review.

13

## DISPOSITION

The appeals are dismissed.

_____
DONDERO, J.

We concur:

_____
MARGULIES, Acting P.J.

_____
BANKE, J.